**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| DAVID FAGEN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>ENVIVA INC., et al.,<br><br>        Defendants. | Civil Action No. 8:22-cv-02844-DKC<br><br>Hon. Deborah K. Chasanow |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**UNDERWRITER DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD.............................................................................................. 3

ARGUMENT ......................................................................................................... 4

I.    PLAINTIFF'S SECTION 11 CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING. ................................................................ 4

II.   PLAINTIFF'S SECTION 11 CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS. ................................................................ 8

      A.   The Statements In The February 2021 Press Release Are Inactionable, And In Any Event, Not False Or Misleading. ................................ 9

      B.   The Statements In The 2020 10-K Are Inactionable, And In Any Event, Not False Or Misleading. .......................................................... 13

      C.   The Statements In The March 2021 And May 2021 Press Releases And Investor Presentation Are Not False Or Misleading. ........................... 16

      D.   The Statements In The April 2021 Press Release Are Not False Or Misleading.................................................................................. 18

      E.   The Statements In The July 2021 Press Release Are Not False Or Misleading.................................................................................. 20

CONCLUSION................................................................................................... 22

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 2U, Inc. Sec. Class Action*,
  2021 WL 3418841 (D. Md. Aug. 5, 2021) .................................................................5, 11, 18

*In re Ariad Pharms., Inc. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016) ...................................................................................................6

*Ash v. PowerSecure Int'l, Inc.*,
  2015 WL 5444741 (E.D.N.C. Sept. 15, 2015)........................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................3

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ..............................................................................................6, 8

*Cozzarelli v. Inspire Pharm. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ................................................................................................3, 4

*Employees' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v.
  MacroGenics, Inc.*,
  61 F.4th 369 (4th Cir. 2023) ...................................................................................................21

*Garnett v. RLX Tech. Inc.*,
  2022 WL 4632323 (S.D.N.Y. Sept. 30, 2022)..........................................................................7

*Hillson Partners Ltd. P'ship v. Adage, Inc.*,
  42 F.3d 204 (4th Cir. 1994) ...................................................................................................21

*In re Humphrey Hosp. Tr., Inc. Sec. Litig.*,
  219 F. Supp. 2d 675 (D. Md. 2002) ......................................................................................11

*Kairalla v. Advanced Med. Optics, Inc.*,
  2008 WL 2879087 (C.D. Cal. June 6, 2008) .........................................................................21

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005) ...................................................................................................6

*Longman v. Food Lion, Inc.*,
  197 F.3d 675 (4th Cir. 1999) ...............................................................................4, 12, 18, 21

*Markman v. Whole Foods Mkt., Inc.*,
2016 WL 10567194 (W.D. Tex. Aug. 19, 2016)....................................................................17

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
543 F. Supp. 3d 96 (D. Md. 2021) ..................................................................................15, 17

*Marsh Grp. v. Prime Retail, Inc.*,
46 F. App'x 140 (4th Cir. 2002) ................................................................................10, 11, 15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) .............................................................................................3

*In re Neustar Sec. Litig.*,
83 F. Supp. 3d 671 (E.D. Va. 2015) ..................................................................................12

*Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................11, 13, 14, 18

*Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*,
918 F.3d 312 (4th Cir. 2019) ........................................................................................11, 12

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999) ..................................................................5

*Raab v. General Physics Corp.*,
4 F.3d 286 (4th Cir. 1993) ........................................................................................11, 12

*Se. Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
2015 WL 3833849 (M.D. Pa. June 22, 2015)........................................................................17

*Slack Techs., LLC v. Pirani*,
2023 WL 3742580 (U.S. June 1, 2023) ...............................................................................4, 5

*Teamsters Loc. 210 Affiliated Pension Tr. Fund v. Neustar, Inc.*,
2019 WL 693276 (E.D. Va. Feb. 19, 2019)...........................................................................13

*TransEnterix Inv. Grp. v. TransEnterix, Inc.*,
272 F. Supp. 3d 740 (E.D.N.C. 2017)........................................................................4, 5, 7, 8

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ........................................................................................21

*Wang Yan v. ReWalk Robotics Ltd.*,
330 F. Supp. 3d 555 (D. Mass. 2018) ..................................................................................17

*Yates v. Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ........................................................................................6, 8

-iv-

**Federal Statutes**

15 U.S.C. § 77k(a) ...........................................................................................................6

15 U.S.C. § 77*l*(a)(2)........................................................................................................6

**Rules**

Fed. R. Civ. P. Rule 8(a)..................................................................................................8

Fed. R. Civ. P. Rule 9(b)......................................................................................2, 3, 4, 8

Fed. R. Civ. P. Rule 12(b)(6) ...........................................................................................3

Defendants Goldman Sachs & Co. LLC, Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Barclays Capital Inc., BMO Capital Markets Corp., HSBC Securities (USA) Inc., RBC Capital Markets, LLC, Truist Securities, Inc., Raymond James & Associates, Inc., Loop Capital Markets LLC, and USCA Securities LLC (collectively the "Underwriters" or "Underwriter Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Dustin Fanucchi ("Plaintiff") Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint").[1]

## PRELIMINARY STATEMENT

Very little of Plaintiff's wide-ranging Complaint pertains to the Underwriter Defendants. The only claim Plaintiff has brought against the Underwriters is under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.  This claim is subject to a stringent standing requirement and is also limited to alleged misrepresentations contained in (or incorporated in) the four corners of the registration statement, dated January 19, 2022, issued in connection with Enviva's secondary public offering (the "Registration Statement")—an exceedingly narrow subset of the various alleged misrepresentations challenged in the Complaint.  Plaintiff's claim against the Underwriter Defendants must be dismissed for two independent reasons:  Plaintiff fails to allege plausibly that (1) he has standing to bring a claim under Section 11 or (2) the Registration Statement contained any actionably false or misleading statements.

*First*, Plaintiff lacks standing to bring a claim under Section 11.  Standing for claims under Section 11 is limited to those individuals who can trace the shares they purchased to a registration

---

[1]    The Underwriter Defendants also join and incorporate the factual background and arguments set forth in the separate motion to dismiss the Complaint filed by Defendants Enviva Inc., John K. Keppler, Shai S. Even, Jennifer Jenkins, Don Calloway, Michael A. Johnson, and Jason E. Paral (the "Enviva Defendants").

statement containing alleged misrepresentations. Here, Plaintiff's Section 11 claim is based on alleged misrepresentations contained in a registration statement for a secondary offering of fewer than 5 million shares, while more than 60 million Enviva shares were still outstanding. But Plaintiff makes no plausible allegations that he either (1) purchased shares directly in that secondary offering, or (2) can trace his purchases to the Registration Statement for that secondary offering. Courts in the Fourth Circuit and throughout the country (including the First, Fifth and Ninth Circuits) have held, in secondary offering cases with equally deficient allegations, that securities plaintiffs cannot adequately plead Section 11 standing where, as here, millions of outstanding shares that were not registered pursuant to the challenged registration statement were already trading in the market prior to the secondary offering. Accordingly, Plaintiff's Section 11 claim must be dismissed.

*Second*, Plaintiff fails to allege any actionable misstatement or omission, let alone with the particularity required by Rule 9(b). Many of the alleged misrepresentations are generalized statements about Enviva's commitments, goals, or aspirations. These types of generalized promotional statements are insufficient to state a claim under the federal securities laws. To the extent that any of the statements identified in the Complaint are even potentially actionable, Plaintiff has failed to plead any particularized facts showing that the statements—which involve descriptions of Enviva's beliefs on an issue of scientific disagreement about the environmental benefits of replacing coal with biofuel—are false or misleading. Plaintiff's allegations of falsity rely on sweeping generalizations about his contrary beliefs regarding Enviva's business model, including numerous conclusory allegations about whether certain purported practices contribute to or ameliorate climate change. These types of allegations are insufficient to plead misstatements or omissions for purposes of Section 11.

For these reasons, further detailed below, Plaintiff's Section 11 claims should be dismissed.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More than "the mere possibility of misconduct," the facts must show that the defendant is liable "for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A court should only accept "well-pled facts." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Conclusory assertions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

"Although claims under Section 11 . . . may not have fraud as an element," Rule 9(b)'s particularity requirement "applies to allegations under the Securities Act where those allegations sound in fraud." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008). Here, the allegations underlying Plaintiff's Section 11 claim plainly sound in fraud because they are identical to the allegations underlying his Section 10(b) fraud claim under the Exchange Act. *See id.* (applying Rule 9(b) to plaintiffs' Securities Act claims where "plaintiffs' allegations regarding the prospectuses…[were] exactly the same as plaintiffs' allegations of fraud under the Exchange Act."). Indeed, Plaintiff has not even attempted to segregate his Securities Act and Exchange Act allegations; instead, the same underlying factual allegations are lumped together as part of a singular fraudulent scheme. *See*, *e.g.*, Compl. ¶ 47 (alleging Enviva Defendants were "aware of the truth about Enviva's wood pellet production activities"); *id.* ¶¶ 48–49 (alleging "greenwashing schemes" used to "drum up business among European and Japanese utilities"); *id.* ¶ 80 ("everybody who had been to one of Enviva's plants knew the Company was using whole trees"); *id.* ¶ 226 (incorporating all preceding allegations for purposes of Section 11 claim). Were that not

-3-

enough, the *exact same statements* forming the basis of Plaintiff's Section 11 claim are also alleged to be fraudulent for purposes of his Section 10(b) claim.  *See id.* ¶ 248.

Plaintiff's "superficial label of negligence or strict liability" and "conclusory disclaimer" of fraud with respect to his Securities Act claim, *see* Compl. ¶ 227, do not change the applicability of Rule 9(b), *see Cozzarelli*, 549 F.3d at 629.  Because Rule 9(b) applies, Plaintiff must plead falsity with particularity.  *See*, *e.g.*, *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir. 1999).

**ARGUMENT**

**I.    PLAINTIFF'S SECTION 11 CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING.**

Plaintiff's Section 11 claim, and his entire case against the Underwriter Defendants, must be dismissed because Plaintiff has failed to plead facts demonstrating that he purchased registered shares that were issued pursuant to the Registration Statement for Enviva's secondary offering, as required to establish his statutory standing.

Here, Plaintiff alleges that Enviva made misleading statements in material incorporated in the Registration Statement for Enviva's secondary offering for fewer than 5 million shares—while over 60 million shares were outstanding prior to that secondary offering.  Declaration of Andrew J. Morris ("Morris Decl."), Ex. 1, Registration Statement at 8.[2]  Accordingly, "the complaint must set forth facts plausibly suggesting that plaintiffs' shares were issued as part of the relevant [secondary] offering."  *TransEnterix Inv. Grp. v. TransEnterix, Inc.*, 272 F. Supp. 3d 740, 760 (E.D.N.C. 2017).  That is so because statutory standing under Section 11 is "limited to the narrow class of persons consisting of those who purchase securities that are the direct subject of the

---

[2] The Court may consider the exhibits to the Morris Declaration because they are "integral to and explicitly relied on in the complaint," and because Plaintiff cannot reasonably "challenge [their] authenticity." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999).

prospectus and registration statement." *Id.* (quotation marks omitted). Indeed, just yesterday, the Supreme Court agreed with "every court of appeals to consider the issue" that, to bring a claim under Section 11, "the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 2023 WL 3742580, at \*5 (U.S. June 1, 2023). Section 11 therefore necessarily "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Id.* at \*6.

In a secondary offering case, Plaintiffs may attempt to satisfy Section 11's standing requirements "in two ways": (1) "prove that they purchased their shares directly in the secondary offering itself"; or (2) "prove that their shares, although purchased in the aftermarket, can be traced back to the secondary offering" by "trac[ing] the chain of title for their shares back to the secondary offering, starting with their own purchases and ending with someone who bought directly in the secondary offering." *TransEnterix,* 272 F. Supp. 3d at 761. (internal citations and quotations omitted). When alleging statutory standing based on the ability to trace shares back to the secondary offering, the complaint must provide sufficient "'factual specificity'" for the court to be able to "'reasonably infer that shares purchased in the aftermarket are traceable to a particular offering.'" *Id.* (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)). If the complaint fails to allege that the shares were purchased directly in the secondary offering, and lacks "factual enhancement plausibly suggesting that the[] shares are traceable" to the secondary offering, the plaintiff has failed to plausibly allege standing under Section 11. *Id.*; *cf. In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at \*26 (D. Md. Aug. 5, 2021) (permitting Section 11 claim to go forward in secondary offering case because plaintiff adequately "allege[d] that it 'purchased shares in the [relevant] Offering itself'").

*TransEnterix*'s approach is consistent with the Supreme Court's decision in *Slack* and follows the approach applied by the First, Fifth, and Ninth Circuits—the only circuits to have considered Section 11 pleading requirements when the challenged statements are contained in a registration statement for a secondary offering.  All of these circuits have uniformly held that Section 11 plaintiffs must plead that they purchased shares pursuant to or traceable to the registration statement for the secondary offering containing the allegedly false or misleading statements.  *See In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (affirming dismissal of Section 11 claim where plaintiffs had not plausibly alleged that they purchased shares directly in secondary offering or that shares could be traced back to secondary offering); *In re Century*, 729 F.3d at 1109 (same); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 502 (5th Cir. 2005) (same).  These circuit court decisions, as well as the Supreme Court's decision in *Slack*, are based on Section 11's statutory text, which makes clear that "[t]he right to sue under Section 11 is limited to 'any person acquiring *such security*.'"  *See*, *e.g.*, *In re Ariad Pharms.*, 842 F.3d at 755 (quoting 15 U.S.C. § 77k(a)) (emphasis added).

The Fourth Circuit has also imposed a similar pleading requirement in the analogous Section 12(a)(2) context, which imposes liability on persons who offer or sell securities "by means of a prospectus or oral communication" that contain a material false statement.  *See* 15 U.S.C. § 77*l*(a)(2) (any person who "offers or sells a security . . . by means of a prospectus or oral communication" containing a materially false statement or material omission "shall be liable . . . to the person purchasing *such security* from him") (emphasis added).  In *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 900 (4th Cir. 2014), the Fourth Circuit dismissed a Section 12(a)(2) claim under the Securities Act for lack of standing because the complaint's "conclusory" allegations failed to provide sufficient "factual enhancement" to allege plausibly that the plaintiff

had purchased shares directly in the secondary offering, as the Fourth Circuit has held is required under Section 12(a)(2).

Here, Plaintiff's bare-bones allegations in the Complaint fail to allege plausibly that the Enviva shares he purchased were issued under the secondary offering. Plaintiff does not allege that he purchased any shares directly in the secondary offering itself, nor does he even attempt to trace the chain of title for his shares back to the secondary offering. Instead, the Complaint's only specific reference to Plaintiff's purchases refers back to Plaintiff's "previously-filed Certification." Compl. ¶ 21. That Certification contains only the date, price, and number of shares purchased by Plaintiff. *See* ECF No. 10-6. It does not say anything about whether any shares were purchased in the secondary offering described in the Registration Statement at issue, pursuant to which Enviva issued approximately 4.95 million shares. Compl. ¶ 182. In fact, the closest purchase in time to the secondary offering is Plaintiff's purchase of shares on January 24, which was made at $70.25—above the $70.00 "maximum offering price per security" under the Registration Statement. *Compare* Morris Decl., Ex. 2, Pro. Supp. at 1, *with* ECF No. 10-6. Accordingly, Plaintiff cannot have purchased any shares *directly* in the secondary offering, and there are certainly no plausible allegations even suggesting as much. *See*, *e.g.*, *Garnett v. RLX Tech. Inc.*, 2022 WL 4632323, at *28 (S.D.N.Y. Sept. 30, 2022) (holding that plaintiffs could not have purchased shares directly in an IPO where certifications demonstrated they did not purchase shares at the offering price).

Nor does the Complaint include any "factual enhancement," *TransEnterix*, 272 F. Supp. 3d at 761, plausibly alleging that any of his purchases can be traced to the Registration Statement for the secondary offering. Indeed, prior to the secondary offering, "there [were] 61,137,744 shares of [Enviva] common stock outstanding," Morris Decl., Ex. 1, Registration Statement at 8,

and there are no factual allegations whatsoever to explain why it would be plausible to believe that the shares Plaintiff purchased were part of the fewer than 5 million shares issued in the secondary offering (approximately 8% of the size of the outstanding shares).  Instead, "the obvious alternative explanation is that" the shares Plaintiff purchased "could instead have come from the pool of previously issued shares" rather than those issued pursuant to the January 19, 2022, Registration Statement.  *In re Century Aluminum*, 729 F.3d at 1108.

The only other allegation Plaintiff makes with respect to his purchases of Enviva shares are conclusory allegations that the defendants owed duties to "Plaintiff and the other members of the Class who purchased Enviva common stock pursuant or traceable to the Offering Documents," Compl. ¶ 44, and that Plaintiff asserts claims on behalf of himself and all those who "acquired shares traceable to the Offering," *id.* ¶ 228.  These statements are devoid of any factual content rendering it plausible that Plaintiff purchased his shares pursuant or traceable to the Registration Statement for the secondary offering, especially in light of the trading details provided in Plaintiff's Certification.  The Fourth Circuit rejected similar "conclusory" allegations in *Yates*, dismissing the Section 12(a)(2) claim where the complaint alleged that certain stock purchases were made "pursuant and/or traceable to" a secondary public offering.  744 F.3d at 901.  The court in *TransEnterix* similarly held that where "roughly 92% of the shares available for purchase by the public were not issued under the" relevant registration statement—coincidentally, the precise same percentage breakdown at issue in this case—plaintiffs' "conclusory allegations do not warrant a plausible inference that the shares are traceable" to that registration statement.  272 F. Supp. 3d at 761.  This Court should similarly dismiss Plaintiff's Section 11 claim here.

## II.   PLAINTIFF'S SECTION 11 CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS.

Although further analysis is unnecessary, Plaintiff also fails to allege that the Registration

Statement contained any actionably false or misleading statement, whether under Rule 9(b)'s requirement that his claims be pled with particularity or Rule 8(a)'s lower "plausibility" standard. Plaintiff points to alleged misstatements and omissions in six documents incorporated by reference into the Registration Statement for Enviva's secondary offering: Enviva's "2020 10-K, [a] February 24, 2021 press release, [a] March 1, 2021 press release, [a] April 28, 2021 press release, [a] May 10, 2021 press release, and [a] July 28, 2021 press release." Compl. ¶ 184. None of these documents contain actionable misstatements or omissions, and Plaintiff's Section 11 claim should be dismissed for that independent reason.

### A. The Statements In The February 2021 Press Release Are Inactionable, And In Any Event, Not False Or Misleading.

The first set of alleged misstatements on which Plaintiff bases his Section 11 claim is from Enviva's February 24, 2021 press release announcing its Q4 2020 financial results. Plaintiff alleges that the following snippets from the press release were false and misleading:

> ***"[T]he product we manufacture helps reduce the lifecycle GHG [greenhouse gas] emissions of our customers, we believe we must also do our part within our operations to mitigate the impacts of climate change***" and "***Enviva and the sustainable renewable fuel we supply to our customers are part of an all-in solution to climate change."***

Compl. ¶ 161 (emphasis in original). According to the Complaint, these statements were materially false and misleading because Enviva omitted that its practices "did not lower carbon emissions, and in fact involved higher greenhouse gas emissions than coal" and "did not in any way mitigate climate change." *Id.* ¶ 162. These allegations fail to state a claim under Section 11.

*First*, as explained by the Enviva Defendants, Plaintiff erroneously focuses on the narrow issue of emissions at the point of burning and ignores the fact that Enviva's statements here expressly refer to *lifecycle* greenhouse gas emissions and Enviva's overall impact on climate change. *See* Enviva Defendants' Memorandum in Support of their Motion to Dismiss the Complaint ("Enviva MTD") at 10. Plaintiff's singular focus on emissions at the point of burning

does nothing to undermine Enviva's statements that its product reduces *net* greenhouse gas emissions.  Moreover, even if Plaintiff disputes Enviva's scientifically supported position that its product reduces lifecycle greenhouse gas emissions, Plaintiff's contrary view does not amount to an actionable falsehood under the federal securities laws because Plaintiff's view is, at most, a difference of scientific opinion on an issue that was indisputably subject to ongoing public debate at the time of the secondary offering.  *See id.* at 11–13.

Indeed, Enviva itself disclosed the ongoing public debate over the environmental sustainability of replacing fossil fuels with biomass in its 2020 10-K, which was incorporated into the Registration Statement.  Enviva warned investors that "special interest groups that focus on environmental issues have expressed their opposition to the use of biomass" and have encouraged regulators "not to classify the use of forest-related biomass as sustainable."  Morris Decl., Ex. 4, 2020 10-K at 19–20.  Enviva explained that these groups were "actively lobbying, litigating and undertaking other actions domestically and abroad in an effort to increase the regulation of, reduce or eliminate the incentives and support for, or otherwise delay, interfere with or impede the production and use of biomass for or by generators."  *Id.* at 20.  Enviva further cautioned investors that these groups' efforts might be successful, and if so, "could materially adversely affect our results of operations, business and financial condition."  *Id.*  Plaintiff's disagreement with Enviva's position on an issue of public debate that Enviva *explicitly warned investors about* does not state a viable securities claim.

*Second*, the statements that Plaintiff identifies are forward-looking opinions that "are immaterial and hence not actionable."  *See Marsh Grp. v. Prime Retail, Inc.*, 46 F. App'x 140, 146 (4th Cir. 2002).  As discussed, these statements pertain to *lifecycle* greenhouse gas emissions and Enviva's contributions towards the fight against climate change—*i.e.*, the impact that Enviva

hopes to have on environmental sustainability *in the future*. Indeed, the generalized statements Plaintiff singles out in this press release are contained within a section that describes Enviva's "commitment to become 'net-zero' in GHG emissions from our operations by 2030." *See* Morris Decl., Ex. 3, February 2021 Press Release at 5. Plaintiff fails to include the text surrounding these challenged statements and ignores that whether a statement is misleading "depends on the context," such as "surrounding text including hedges, disclaimers, and apparently conflicting information." *In re 2U,* 2021 WL 3418841, at *7 (quoting *Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015)). The surrounding context of the statements—in addition to their plain language—makes clear that Enviva was not representing that it had already mitigated climate change, but rather was articulating its commitment to do so moving forward.[3] Because "projections of future performance not worded as guarantees are generally not actionable under the federal securities laws," *In re Humphrey Hosp. Tr., Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 683 (D. Md. 2002) (quoting *Raab v. General Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993)), these forward-looking statements articulating Enviva's commitment to achieve net-zero carbon emissions by 2030 do not state a viable Section 11 claim. *See also Marsh Grp.*, 46 F. App'x at 146 (finding "various permutations of management's expression of 'commitment'" to be nonactionable forward-looking statements).

Further, these forward-looking statements implicate the "bespeaks caution" doctrine under which claims are "subject to dismissal if cautionary language in the offering documents negates the materiality of the alleged misrepresentations." *Paradise Wire & Cable Defined Benefit*

---

[3] As the Complaint makes clear, Enviva's statements here relate to its **belief** that it must do its part to mitigate climate change. And the press release included express cautionary language that statements of belief are "intended to identify forward-looking statements . . . based on [Enviva's] current expectations and beliefs concerning future developments." Morris Decl., Ex. 3, February 2021 Press Release at 18.

*Pension Plan v. Weil*, 918 F.3d 312, 319 (4th Cir. 2019) (internal citations and quotations omitted). Here, as discussed above, Enviva's 2020 10-K expressly acknowledged the differing views on whether biomass ameliorates climate change and cautioned that, in the future, regulators might agree with critics of the sustainability of biomass. These "specific warnings" about the public debate over the benefits of replacing fossil fuels with biomass means that the information that Plaintiff believes should have been disclosed—*i.e.*, that Enviva would not mitigate climate change—would not have "significantly altered" "the total mix of information" for the reasonable investor. *Paradise Wire*, 918 F.3d at 319–20.

*Third*, many of these statements are "[i]ndefinite statements of corporate optimism"—or puffery—that "are generally non-actionable, as they do not demonstrate falsity." *In re Neustar Sec. Litig.*, 83 F. Supp. 3d 671, 680 (E.D. Va. 2015) (quoting *Carlucci v. Han*, 886 F. Supp. 2d 497, 522 (E.D. Va. 2012); *see also In re Humphrey*, 219 F. Supp. 2d at 682-83 ("statements cited by Plaintiffs are not actionable because they are the kind of general statements of pride and optimism upon which reasonable investors would not rely"). Plaintiff appears to contend that the statements in the February 2021 press release about Enviva's contributions towards an "all-in solution to climate change" and its belief that it must "do [its] part to mitigate the impacts of climate change" constitute untrue statements of material fact simply because Plaintiff disagrees with Enviva's impact on climate change. However, the statements are the type of vague, general "puffery" that courts in the Fourth Circuit and elsewhere consistently have held to be nonactionable under the federal securities laws. *See*, *e.g.*, *Raab*, 4 F.3d at 289 (statement that company's service group "is poised to carry the growth and success of 1991 well into the future" was "soft" and "puffing" and not actionable under the securities laws); *Longman v. Food Lion, Inc.*, 197 F.3d 675, 685 (4th Cir. 1999) (company's statements in its annual report that "[w]e will

-12-

continue to pay close attention to service levels and cleanliness in our stores" is "the kind of puffery and generalization[]" that would not have affected the decisions of a reasonable investor).

*Fourth*, to the extent that Plaintiff challenges the accuracy of Enviva's belief that it must contribute towards the fight against climate change, the Complaint includes no particularized facts showing that Enviva does not hold that belief.  Indeed, the context surrounding the challenged statements suggests the exact opposite.   In the press release, Enviva explains its plan to neutralize both its direct and indirect greenhouse emissions, as well as its plan to engage external stakeholders to reduce their emissions—all of which support Enviva's stated belief.  *See* Morris Decl., Ex. 3, February 2021 Press Release at 5.  This alone defeats Plaintiff's claim.  "In the Fourth Circuit, to plead that an opinion is a false factual statement in a securities fraud case, a plaintiff must 'allege that the opinion expressed was different from the opinion actually held by the speaker.'" *Teamsters Loc. 210 Affiliated Pension Tr. Fund v. Neustar, Inc.*, 2019 WL 693276, at *4 (E.D. Va. Feb. 19, 2019) (internal citation omitted); *see also Omnicare*, 575 U.S. at 195 (plaintiffs "cannot proceed without identifying one or more *facts* left out of Omnicare's registration statement" (emphasis added)).  Plaintiff pleads nothing of the sort, and thus his claim fails.

**B.      The Statements In The 2020 10-K Are Inactionable, And In Any Event, Not False Or Misleading.**

The second set of alleged misstatements derive from Enviva's Form 10-K filed on February 24, 2021, which Plaintiff alleges "contained substantively similar [statements] to the 2018 10-K and 2019 10-K." Compl. ¶ 163.  According to the Complaint, the Form 10-K included two sets of statements Plaintiff unpersuasively contends were misleading.  First, Plaintiff points to Enviva's statements that "***Our customers are subject to stringent requirements regarding the sustainability of the fuels they produce. In addition to our internal sustainability policies and initiatives, our wood fiber procurement is conducted in accordance with leading forest***

*certification standards.*"  *Id.* ¶ 111 (emphasis in original).  Second, Plaintiff identifies an entire section of the Form 10-K discussing the continuing commitments of its Health, Safety, Sustainability, and Environmental Committee:

> The Board has established a health, safety, sustainability and environmental committee (the "HSSE committee") [that] assists the Board in fulfilling its oversight *responsibilities with respect to the Board's and our continuing commitment to (1) ensuring the safety of our employees and the public and assuring that our businesses and facilities are operated and maintained in a safe and environmentally sound manner, (2) sustainability, including sustainable forestry practices, (3) delivering environmental benefits to our customers, the forests from which we source our wood fiber and the communities in which we operate and (4) minimizing the impact of our operations on the environment.*

Morris Decl., Ex. 4, 2020 10-K at 113 (emphasis in original).[4]  Plaintiff argues these statements were materially false and misleading because they omitted to disclose that Enviva's practices allegedly "undermined rather than sustained forests" and "did not ensure that its 'business and facilities are operated in . . . an environmentally sound manner.'"  Compl. ¶ 114.  Plaintiff also claims that the statements were materially false and misleading because "Enviva did not 'deliver[] environmental benefits' but instead used environmentally unsound procurement practices to deliver a product with worse emissions than coal" and "did not minimize the impact of [Enviva's] operations on the environment."  *Id.*

As an initial matter, as the Enviva Defendants explain, Plaintiff fails to show—much less with particularized facts—that the representations in the first statement above concerning customers' "stringent requirements" and its own "wood fiber procurement" are false or misleading.  *See* Enviva MTD at 23.  There are no factual allegations whatsoever that Enviva's customers are not subject to stringent requirements or that its wood fiber procurement is not conducted in

---

[4] Plaintiff quotes statements contained in Enviva's 2018 10-K and 2019 10-K, which "contained substantively similar [alleged] misrepresentations to" the 2020 10-K.  *See* Compl. ¶¶ 112, 163. Because Plaintiff bases his Section 11 claim on the 2020 10-K, the Underwriter Defendants quote the statements as reflected in the 2020 10-K.

-14-

accordance with leading forest certification standards. Indeed, there aren't even any allegations as to what these "requirements" or "standards" are in the first place. These omissions doom Plaintiff's claim with respect to the first statement above. *See Omnicare*, 575 U.S. at 195.

Plaintiff's reliance on the second generalized statement regarding Enviva's "continuing commitment[s]" with respect to health, safety, sustainability, and the environment fares no better. *See* Compl. ¶ 112. *First*, as explained by the Enviva Defendants, this statement about Enviva's environmental goals constitutes puffery that cannot sustain a Section 11 claim. *See* Enviva MTD at 19–21. Indeed, the statement constitutes mere "general, aspirational language akin to and being 'committed' to reaching particular goals." *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 135 (D. Md. 2021), *aff'd*, 31 F.4th 898 (4th Cir. 2022). Such commitments are in no way "specific" or "verifiable" and are thus nonactionable. *See id.* at 136.

*Second*, Plaintiff does not plausibly allege that the statement is false or misleading. Here, Enviva's statement concerns its continuing *commitment* to various things; Enviva does not represent that it has accomplished these things, nor that its commitment will always be successful. Plaintiff does not challenge Enviva's stated commitment and instead offers only conclusory allegations that Enviva has not achieved the commitment. Such conclusory allegations in no way render Enviva's statement here false or misleading.

*Third*, the "continuing commitments" described in the challenged statements are forward-looking statements—they speak to Enviva's continuing commitment to achieve certain goals in the future. As explained above, *supra* Part II.A, such forward-looking statements are not actionable under Section 11. *See Marsh Grp.*, 46 F. App'x at 146.

C. **The Statements In The March 2021 And May 2021 Press Releases And Investor Presentation Are Not False Or Misleading.**

The third set of alleged misstatements is from an investor presentation attached to press releases on March 1, 2021 and May 10, 2021.  Plaintiff identifies four "statements" in the investor presentation that are purportedly false or misleading: (1) Enviva's alleged claim that it was "'***fighting climate change, displacing coal, and growing more trees***'"; (2) its alleged touting of "'***substantial GHG reductions***'"; (3) its "participation in a '***market driven by [a] global commitment to fight climate change***'"; and (4) its "'***responsible wood supply program***.'"  Compl. ¶ 164 (emphasis in original).  Plaintiff argues the statements were materially false and misleading because they failed to disclose that "(i) Enviva's actual procurement practices undermined rather than sustained forests; (ii) Enviva's pellets were not sustainably sourced; and (iii) Enviva's practices did not lower carbon emissions, and in fact involved higher greenhouse gas emissions than coal, and did not in any way 'fight climate change.'"  *Id.* ¶ 165.

*First*, these statements all fail for many of the same reasons discussed above and articulated by the Enviva Defendants.  *See supra* Parts II.A–B; Enviva MTD at 8–10, 19–22.  Most notably, Plaintiff's assertions of falsity—based exclusively on the amount of CO2 emitted when wood pellets are burned—ignores that these statements refer to Enviva's overall impact on climate change and lifecycle greenhouse gas emissions.  And as with the other statements, Plaintiff cannot escape the reality that its disagreement stems from a widespread scientific debate over the environmental benefits of replacing coal with biomass—a public debate that Enviva itself disclosed and that any reasonable investor would have known long before the time of the secondary offering.  Simply put, Enviva's taking a position on this issue of public debate is non-actionable under the federal securities laws.

*Second,* as with other alleged misstatements, Plaintiff omits relevant context regarding the challenged statements.  The first three "statements" are merely *headers for various slides* included in an investor presentation.  *See* Morris Decl., Exs. 5–6, Investor Presentation.  They do not make any affirmative representations, and simply serve to describe the data included in the presentation.  And Plaintiff does *not dispute* the accuracy of the data contained within these slides, reflecting the displacement of coal, the growth of more trees, substantial GHG emissions reductions, and a market driven by a global commitment to climate change.  *See id.*  Plaintiff's failure to engage with the content underlying the purportedly misleading statements—content which supports the claim that Enviva is fighting climate change—underscores his inability to plausibly allege how the statements are in any way false or misleading. At most, the challenged statements constitute mere "loose optimism" about Enviva's "state of affairs and its future prospects," which is not actionable under Section 11.  *See Wang Yan v. ReWalk Robotics Ltd.*, 330 F. Supp. 3d 555, 571 (D. Mass. 2018) (internal citation omitted); *see also In re Marriott*, 543 F. Supp. 3d at 119 ("statements of optimism" that are "not worded as guarantees" are nonactionable puffery) (internal citations omitted).

*Third*, with respect to the fourth statement characterizing Enviva's wood supply program as being "responsible," it is a generalized, positive statement of corporate puffery upon which no reasonable investor would rely.  A reasonable investor cannot even define what qualifies as a "responsible" wood supply program, and numerous other courts have concluded that statements describing the "responsible" behavior of a company constitute inactionable puffery.  *See*, *e.g.*, *Markman v. Whole Foods Mkt., Inc.*, 2016 WL 10567194, at *7 (W.D. Tex. Aug. 19, 2016) (statement that Whole Foods seeks to be a "deeply responsible company" is the "type of vague, loosely optimistic affirmation that courts have repeatedly found immaterial"); *Se. Pennsylvania*

*Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at \*39 (M.D. Pa. June 22, 2015) (statement touting "responsible growth" of company inactionable puffery).  In addition, this statement is a mere *opinion* that does not support an imposition of liability under the securities laws.  As the surrounding context shows, Enviva's statement here reflects its *belief* that its "Track & Trace program…is an important element of [its] *responsible wood supply program* and provides unprecedented transparency into [Enviva's] procurement activities."  Morris Decl., Exs. 5–6 at 12, Investor Presentation (emphasis added).  Plaintiff conveniently ignores this context in a feeble attempt to manufacture a misleading statement out of vague and generalized characterization of Enviva's belief that the Track & Trace program was an important element of its "responsible" wood supply program.  By failing to allege any facts showing how such an opinion is "demonstrable as being true or false," Plaintiff's claim fails.  *See Longman*, 197 F.3d at 682; *see also Omnicare*, 575 U.S. at 188 ("Reasonable investors do not understand [opinions] as guarantees, and [the federal securities laws] therefore do[] not treat them that way.").

**D.     The Statements In The April 2021 Press Release Are Not False Or Misleading.**

The fourth set of alleged misstatements is from an April 28, 2021 Enviva press release announcing its Q1 2021 results, in which Enviva allegedly: (1) "tout[ed] its purported '**adherence to and accountability for sustainable forest management and wood sourcing**'; and (2) claim[ed] that '**Enviva requires landowners to commit to replant following harvests in which Enviva participates**.'"  Compl. ¶ 168 (emphasis in original).  Plaintiff claims that these statements were materially false and misleading because "(i) Enviva's actual procurement practices undermined rather than sustained forests (ii) Enviva's pellets were not sustainably sourced; and (iii) Enviva did not secure replanting or regeneration of the whole trees it procured for its wood pellets."  *Id.* ¶ 169.

Once again, the Complaint ignores the context in which these statements were made, which is integral in determining whether they are false or misleading.  *See In re 2U*, 2021 WL 3418841, at *7.  Considered in context, the first statement simply describes the public data Enviva made available "[i]n an effort to transparently demonstrate [its] adherence to and accountability for sustainable forest management and wood sourcing" through its Track & Trace system.  *See* Morris Decl., Ex. 7, April 2021 Press Release at 7.  Plaintiff does not dispute that Enviva did in fact develop a Track & Trace program to provide its data to the public, and he cannot plausibly allege otherwise.  That Plaintiff believes that Enviva's practices did not actually benefit the environment in no way renders false or misleading Enviva's statement that it produced public data in the spirit of transparency.  *See also* Enviva MTD at 23–24.  Moreover, Enviva's statements regarding its "effort" with respect to transparent data constitute "optimistic expressions, not a guarantee of future performance" and are therefore nonactionable.  *See Ash v. PowerSecure Int'l, Inc.*, 2015 WL 5444741, at *8 (E.D.N.C. Sept. 15, 2015).

Plaintiff also fails to allege facts plausibly suggesting that Enviva's statement regarding its requirement that landowners "commit" to replanting forests is false.  *First*, Plaintiff acknowledges that landowners replant forests following harvests.  *See* Compl. ¶¶ 102, 200.  Although Plaintiff challenges the benefits of the pine seedlings, it concedes that seedlings are planted following harvests, and does not allege that no replanting occurs.  *Second*, even if Plaintiff disagrees with the manner in which landowners replenish harvested forests, it does not dispute anywhere in the Complaint that Enviva does in fact require landowners to "commit" to replant following harvests. The alleged misstatement does not purport to promise that Enviva had already secured replanting and regeneration of the trees it procured for its wood pellets, nor does it promise that such replanting would, in fact, occur.  *See* Morris Decl., Ex. 7, April 2021 Press Release at 6–8.  Indeed,

Enviva made no representations whatsoever in the press release guaranteeing replanting.  As the Enviva Defendants explain, the mere fact that a single former employee stated that he wasn't aware of Enviva imposing consequences on landowners if they failed to replant their forests does not render this statement about Enviva's requirement that landowners commit to replant false or misleading.  *See* Enviva MTD at 23.

**E.      The Statements In The July 2021 Press Release Are Not False Or Misleading.**

The fifth and final set of alleged misstatements is from a July 28, 2021 press release by Enviva announcing its Q2 2021 financial results.  Plaintiff contends that two statements contained in the press release were allegedly false and misleading: (1) Enviva's "claim[] that '*[s]ustainability is the core of our value proposition in our mission to displace coal, grow more trees, and fight climate change*' while citing Enviva's supposedly '*sustainable forest management*'"; and (2) Enviva's statement that its "data demonstrate that…*on average just under 32% of the volume from each harvest went to Enviva*, while the remaining 68% of the volume went to other participants in the forest products sector, principally to those that manufacture higher-value products that ensure long-term carbon storage such as dimensional lumber, building products, and furniture.  *Enviva only uses the remaining low-value wood in its operations*."  Ex. 8, July 2021 Press Release.  Plaintiff argues that these statements were materially false and misleading because they failed to state that: "(i) Enviva's actual procurement practices undermined rather than sustained forests; (ii) Enviva's pellets were not sustainably sourced; (iii) Enviva's practices in fact involved higher greenhouse gas emissions than coal, and did not in any way 'fight climate change'; (iv) Enviva routinely took substantially more than 30% of harvests; and (v) Enviva did not only use 'low-value wood.'"  *Id.* ¶ 175.

As explained above, *supra* Parts II.A & C., Enviva's first statement regarding its mission to displace coal, grow more trees, and fight climate change is a nonactionable forward-looking

statement of corporate optimism on an issue of public debate, and, in any event, is not false or misleading.

Enviva's second statement regarding the sources of Enviva's wood pellets is not false or misleading because they are not inconsistent with Plaintiff's allegations regarding the "truth." Plaintiff alleges that "Enviva's own Track & Trace data shows that Enviva took greater than 30% of the harvest volume in over 2/3 of acreage harvested by the Company, and often took 70-100% of the wood harvested." Compl. ¶ 100. Nothing about these purported statistics undermine Enviva's statement that "*on average* just under 32% of the volume from each harvest went to Enviva." *See id.* ¶ 174 (emphasis added). Even if Enviva took more than 30% of the harvest volume in 2/3 of acreage harvested by the company, the average volume from each harvest could still have been under 32%. *See Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *3 (C.D. Cal. June 6, 2008) ("Statements are not misleading where they are 'not necessarily inconsistent with the underlying [allegedly] true facts.'" (quoting *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 n.7 (9th Cir. 2002)). At most, Plaintiff challenges Enviva's interpretation of its own data, and "[i]nterpretations of . . . data are considered opinions." *Employees' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 387 (4th Cir. 2023) (quoting *City of Edinburgh Council v. Pfizer*, 754 F.3d 159, 170 (3d Cir. 2014)). The statements are therefore "inactionable opinions based on accruing data" that the securities laws do not prohibit. *Id.* at 388.

Indeed, Plaintiffs' allegations of falsity derive from data that Enviva had already *publicly disclosed* at the time of the secondary offering and that Enviva cites in the prospectus and throughout documents incorporated into it. *See*, *e.g.*, Morris Decl., Ex. 4, 2020 10-K at 7 ("We summarize all [Track & Trace] information periodically and publish tract-level details on our

website).  Plaintiff does not proffer any particularized facts plausibly suggesting that Enviva would issue statements that directly contradict the data it had made publicly available.  Even if Plaintiff's characterization of the data Enviva itself made publicly available was correct—it is not—"the securities laws do not require disclosure of information that is already in the public domain." *Longman*, 197 F.3d at 684 (citing *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 211 (4th Cir. 1994)).  Here, the data that Plaintiff relies upon was "in fact well known to the market" precisely because Enviva provided that data.  *See id.*  "Because the market was thus informed" of the data underlying Enviva's purportedly false statement, it is immaterial and nonactionable.  *Id.* at 685.

Finally, to the extent that Plaintiff takes issue with Enviva's statements surrounding "low-value wood," those statements are not false and misleading because, as demonstrated by the Enviva Defendants, Plaintiff has not alleged any particularized facts demonstrating that Enviva uses anything other than low-value wood in its wood pellets.  *See* Enviva MTD at 17–18. As they explain, whole trees can (and often do) qualify as low-value wood.  *Id.*

## CONCLUSION

For these reasons, the Underwriter Defendants respectfully request that the Court grant the Underwriter Defendants' Motion to Dismiss and dismiss Plaintiff's Section 11 claim with prejudice.

Dated:  June 2, 2023

Respectfully Submitted,

*/s/ Andrew J. Morris*

Andrew J. Morris (D. Md. Bar No. 22945)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-88400
Facsimile: (202) 339-8500
amorris@orrick.com

Darrell S. Cafasso (admitted *pro hac vice*)
Jennifer M. Keighley (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
dcafasso@orrick.com
jkeighley@orrick.com

Alexander K. Talarides (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5769
atalarides@orrick.com

*Attorneys for the Underwriter Defendants*