**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| DAVID FAGEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ENVIVA INC., JOHN K. KEPPLER, and SHAI S. EVEN,<br><br>                    Defendants. | Civil Action No. DKC 22-2844<br><br><br>Hon. Deborah K. Chasanow |

**MEMORANDUM OF LAW IN OPPOSITION**
**TO THE ENVIVA DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ........................................................................................................1

FACTS ALLEGED IN PLAINTIFF'S COMPLAINT.................................................3

   I.     COMPANY BACKGROUND .......................................................................3

         A.  Enviva's Origins and Business Model..................................................3

         B.  Enviva's Reliance on Foreign Environmental Subsidies.......................4

         C.  Enviva Expands Its Core Operations .....................................................5

   II.    ENVIVA MISLEADS INVESTORS ............................................................6

         A.  Enviva's "Green" Claims.......................................................................6

         B.  The Truth Emerges ...............................................................................7

ARGUMENT...............................................................................................................10

   I.     APPLICABLE LEGAL STANDARDS ARE SATISFIED .............................10

         A.  Applicable Pleading Standards Do Not Warrant Dismissal .................10

         B.  Enviva Defendants' Attempt to Go Beyond the Pleadings Violates Controlling Authority .................................................................................................13

   II.    THE COMPLAINT ADEQUATELY PLEADS MATERIAL MISREPRESENTATIONS AND OMISSIONS ............................................17

         A.  Plaintiff Identifies Misrepresentations and Omissions with Particularity .............17

            1.   Misrepresentations and Omissions Concerning Enviva's Sourcing of its Wood Pellets from Whole Trees ...................................18

      2.   Misrepresentations and Omissions Concerning Enviva's GHG Reduction ...................................................................................20

      3.   Misrepresentations and Omissions Concerning Forest Sustainability.......................................................................................21

   B.  Plaintiff Has Adequately Alleged Materiality ........................................................23

III.    PLAINTIFF'S COMPLAINT PLEADS A STRONG INFERENCE OF SCIENTER .....24

   A.  The Complaint Alleges Facts Demonstrating That Defendants Knew, or Recklessly Ignored, Material Adverse Information................................................25

   B.  Defendants Had Unique Financial Motives to Greenwash Enviva's Practices .....26

   C.  The Core Operations Theory Supports a Strong Inference of Scienter .................27

IV.    THE COMPLAINT ADEQUATELY ALLEGES CONTROL PERSON CLAIMS UNDER § 15 OF THE SECURITIES ACT AND § 20(a) OF THE EXCHANGE ACT........................................................................................................................27

CONCLUSION.................................................................................................................28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aldridge v. A.T. Cross*,
  284 F.3d 72 (1st Cir. 2002)......................................................................................26

*Arnlund v. Deloitte & Touche LLP*,
  199 F. Supp. 2d 461 (E.D. Va. 2002) .....................................................................25

*Benak v. Alliance Capital Mgmt. L.P.,*
  435 F.3d 396 (3d Cir. 2006).....................................................................................15

*Burt v. Maasberg*,
  No. ELH-12-0464, 2014 U.S. Dist. LEXIS 41982 (D. Md. Mar. 28, 2014) ...11, 12, 17, 19, 20

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
  496 F. Supp. 3d 952 (E.D. Va. 2020) ......................................................................11

*City of Pontiac Gen. Employees' Ret. Sys.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................................24

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
  423 F. Supp. 2d 348 (S.D.N.Y. 2006)................................................................20, 22

*Dunn v. Borta*,
  369 F.3d 421 (4th Cir. 2004) ...................................................................................23

*Epstein v. World Acceptance Corp.*,
  No. 6: 14-cv-01606-MGL, 2015 U.S. Dist. LEXIS 64494 (D.S.C. May 18, 2015)................17

*Feinberg v. T. Rowe Price Group, Inc.*,
  No. MJG-17-0427, 2018 U.S. Dist. LEXIS 140709 (D. Md. Aug. 20, 2018).........................14

*Ganino v. Citizens Utils. Co.*,
  228 F.3d at 154 (2d Cir. 2000).............................................................................19, 23

*Goldfarb v. Mayor and City Council of Baltimore*,
  791 F.3d 500 (4th Cir. 2015) ...................................................................................15

*In re Constellation Energy Grp., Inc.*,
  738 F. Supp. 2d 614 (D. Md. 2010).........................................................................19

iii

*In re Genworth Fin. Inc. Sec. Litig.*,
103 F. Supp. 3d 759 (E.D. Va. 2015) ...........................................................11, 25, 27

*In re Hum. Genome Scis. Inc. Sec. Litig.*,
933 F. Supp. 2d 751 (D. Md. 2013) ...................................................................15

*In re Inspire Pharms., Inc. Sec. Litig.*,
515 F. Supp. 2d 631 (M.D.N.C. 2007) ...............................................................15

*In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*,
876 F. Supp. 2d 616 (D. Md. 2012) ...................................................................16

*In re Under Armour Sec. Litig.*,
342 F. Supp. 3d 658 (D. Md. 2018) ...................................................................14

*In re Zonagen, Inc. Sec. Litig.*,
322 F. Supp. 2d 764 (S.D. Tex. 2003) ................................................................22

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ...........................................................................24

*Johnson v. Pozen*, *Inc.*,
2009 U.S. Dist. LEXIS 12765 (M.D.N.C. Feb. 19, 2009)........................................15

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
No. 0:15-CV-02393-MGL, 2016 U.S. Dist. LEXIS 96499 (D.S.C. July 25, 2016).........16, 19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......................................................................14, 15

*Kiken v. Lumber Liquidators Holdings, Inc.*,
155 F. Supp. 3d 593 (E.D. Va. 2015) .........................................................17, 21, 25, 27

*Longman v. Food Lion, Inc.*,
197 F.3d 675 (4th Cir. 1999) ...........................................................................23

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)................................................................20

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27, 131 S. Ct. 1309 (2011) ...................................................................9

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*,
576 F.3d 172 (4th Cir. 2009) .......................................................................10, 25

iv

*Nieman v. Duke Energy Corp.*,
No. 3:12CV456, 2013 U.S. Dist. LEXIS 110693 (W.D.N.C. July 26, 2013) ...................17, 18

*Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*,
556 F.3d 177 (4th Circ. 2009)...................................................................................................17

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)...................................................................................................................3

*Ottmann v. Hanger Orthopedic Group, Inc.*,
353 F.3d 338 (4th Cir. 2003) ...............................................................................................21, 23

*Patel v. L-3 Commc'ns Holdings, Inc.*,
No. 14-CV-6038 (VEC), 2016 U.S. Dist. LEXIS 42978 (S.D.N.Y. Mar. 30, 2016) .............22

*Phillips v. LCI Int'l, Inc.*,
190 F.3d 609 (4th Cir. 1999) ....................................................................................................23

*Presley v. City of Charlottesville*,
464 F.3d 480 (4th Cir. 2006) ....................................................................................................10

*Quinteros v. Sparkle Cleaning, Inc.*,
532 F. Supp. 2d 762 (D. Md. 2008).......................................................................................3, 11

*Robertson v. Sea Pines Real Estate Cos.*,
679 F.3d 278 (4th Cir. 2012) ....................................................................................................11

*SEC v. Bank of Am. Corp.*,
No. 3:13-cv-447-MOC-DSC, 2014 U.S. Dist. LEXIS 63788 (W.D.N.C. Mar. 31, 2014)......21

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992) ...........................................................22

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009) ..................................................................................................22

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc.*,
552 U.S. 148 (2008)..................................................................................................................10

*Teachers' Ret. Sys. v. Hunter*,
477 F.3d 162 (4th Cir. 2007) ..........................................................................................2, 12, 17

*Tchatchou v. India Globalization Capital, Inc.*,
2021 U.S. Dist. LEXIS 16665 (D. Md. Jan. 28, 2021)............................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007) .......................................................................................... *passim*

*In re Trex Co., Inc. Sec. Litig.*,
     454 F. Supp. 2d 560 (W.D. Va. 2006) ...............................................................22

*United States v. Townsend*,
     886 F.3d 441 (4th Cir. 2018) ........................................................................15, 17

*Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local*,
     728 F.3d 354 (4th Cir. 2013) ...............................................................................15

*Woodrow v. Vericrest Fin., Inc.*,
     No. AW-09-1612, 2009 U.S. Dist. LEXIS 110709 (D. Md. Nov. 30, 2009) .........................11

*Yates v. Mun. Mortg. & Equity, LLC*,
     744 F.3d 874 (4th Cir. 2014) ...............................................................................27

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
     780 F.3d 597 (4th Cir. 2015) ........................................................................... *passim*

## Rules

Fed. R. Civ. P. 8(a) ...............................................................................................11

Fed. R. Civ. P. 9(b) .....................................................................................11, 12, 18

Fed. R. Civ. P. 12.....................................................................................................3

Fed. R. Civ. P. 12(b) ...............................................................................................15

Fed. R. Civ. P. 12(b)(6)................................................................................. *passim*

Fed. R. Civ. P. 12(d) ...............................................................................................15

Fed. R. Civ. P. 56....................................................................................................15

## Statutes

15 U.S.C. § 78u-4(b)(1) .....................................................................................12, 18

15 U.S.C. § 78u-4(b)(3)(B)......................................................................................15

Private Securities Litigation Reform Act of 1995 .................................................................. *passim*

Section 10(b) of the Securities Exchange Act of 1934 ........................................................... *passim*

Section 11 of the Securities Exchange Act of 1934 ....................................................................25

Section 15 of the Securities Exchange Act of 1934 ....................................................................25

Section 20(a) of the Securities Exchange Act of 1934 ................................................................25

Lead Plaintiff Dustin Fanucchi ("Plaintiff"), for his opposition to the Enviva Defendants'

Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint for

Violation of Federal Securities Laws ("Enviva Br.") (ECF. No. 62-1),[1] states as follows:

## INTRODUCTION

Plaintiff's Complaint alleges in thorough detail how Enviva Defendants used

"greenwashing" – false representations about its present, ongoing environmental practices and

impacts – to attract investors focused one environmental, social, and governance ("ESG")

investments.[2] Enviva's wood pellets – its core product – are substitutes for coal in power

generation, and were subsidized by certain European countries based on claimed environmental

advantages. Understanding that ESG investors and regulators were concerned with deforestation,

Enviva Defendants falsely claimed that ***all of Enviva's wood pellets*** were derived from otherwise

unused waste wood such as tree tops and limbs, not whole trees.[3] ¶61. This was not true. Enviva

Defendants also disclaimed any use of sawtimber in manufacturing wood pellets, which was also

false.  ¶63. Enviva Defendants further omitted reliance on environmentally-destructive clear-

cutting practices and deforestation. ¶¶99-102. These distortions inflated Enviva's share price and

---

[1] Enviva Defendants are Enviva, Inc. ("Enviva" or the "Company"), the Company's Chief Executive Officer, John K. Keppler, Executive Vice President and Chief Financial Officer, Shai S. Evan, Vice President and Chief Sustainability Officer, Jennifer Jenkins, Vice President of Equity, Inclusions and Impact, Don Calloway, Vice President and Chief Accounting Officer, Michael A. Johnson, and Vice President and Associate General Counsel and Secretary, Jason E. Paral.

[2] All references to the "Complaint" are to the operative Amended Complaint (the "Complaint") (ECF No. 34), and all references to numbered paragraphs in the form "¶__" are to the paragraphs thereof.

[3] All emphasis supplied unless otherwise noted.

1

enabled the Company to raise gross proceeds of ***$346 million*** in a secondary public offering conducted in January 2022.

The truth came to light starting on October 12, 2022, when Blue Orca Capital ("Blue Orca"), a stock research and commentary website, issued a report (the "Blue Orca Report") revealing, among other things, that Enviva's wood pellet procurement and production methods were sharply at odds with its alleged environmental focus. In response, Enviva's stock price plunged by more than 13%, damaging shareholders. Then, on December 5, 2022, the conservation news portal *MONGABAY* published a report highlighting the statements of a knowledgeable Enviva insider (the "Whistleblower Report") that both corroborated the Blue Orca Report and further exposed Enviva's supposed green credentials as a fraud. Enviva shares fell again, this time by more than 9%. Less than two weeks later, the Netherlands' Parliament – citing the Whistleblower Report – successfully compelled its government to stop paying subsidies to Enviva.

Plaintiff's Complaint in this case not only alleges the "why" of Defendants' misconduct, but also the "who," "what," "when," "where" and "how." *See* ¶¶22-44, 49-51, 58-199. Plaintiff identifies each misrepresentation with particularity, and describes in detail why each statement was materially false or misleading when made. Plaintiff also pleads facts supporting an inference of scienter that is at least as compelling as any non-culpable inference.

Defendants incorrectly argue that the securities laws prohibit only outright "falsehoods" and that Plaintiff's allegations are reducible to "disagreements 'between two permissible judgments.'" *See* Enviva Br. at 2 (internal quotations omitted). Both contentions are without merit. First, to adequately plead the falsity  element of the Securities Act and Exchange Act, Plaintiff need only identify sufficient facts "to support a reasonable belief in the allegation that the defendant's statement was misleading." *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 174 (4th Cir.

2007). Plaintiff is not obligated to prove that Defendants disbelieved their own statements. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 36, 131 S. Ct. 1309, 1317 (2011).

Second, even if Defendants' clear factual statements about Enviva's practices could somehow be construed as opinions, they would still violate the federal securities laws for omitting material facts that conflicted with what a reasonable investor would take from the statements themselves. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015). More generally, Defendants suggest that the presence of factual disputes is fatal to Plaintiff's ability to state claims under the Securities and Exchange Acts. In demanding that Plaintiff's case be proven up front, Enviva Defendants have it backwards. The issue, at this stage, "is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 767 (D. Md. 2008). The complex factual disputes highlighted in Enviva Defendants' motion suggest that Plaintiff should be afforded an opportunity to develop the factual record through discovery.

In their bid to short-circuit the factual disputes at the center of their arguments, Enviva Defendants rely upon more than 2,500 pages of extraneous materials. It is well-settled that such extraneous material has no place in a motion to dismiss. The Private Securities Litigation Reform Act of 1995 ("PSLRA") does not convert Federal Rule of Civil Procedure 12 into a trial-type, papers-only proceeding, and Defendants cannot ask the Court to determine credibility or compare competing inferences of falsity: that task is reserved for the jury. The U.S. Supreme Court has specifically instructed that the inference of scienter from the alleged facts must be cogent, and must be at least as compelling as the competing inferences drawn from those same facts; not that the inference of scienter must compete with any and every theoretically possible factual scenario. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Because the Complaint's

3

allegations, taken as true, satisfy applicable pleading standards, Enviva Defendants' motion to dismiss should be denied in its entirety.

## FACTS ALLEGED IN PLAINTIFF'S COMPLAINT

### I.    COMPANY BACKGROUND

#### A.    Enviva's Origins and Business Model

Enviva, founded in 2004 by Defendants Keppler and Meth, is a biomass energy company that develops, constructs, acquires, owns, and operates wood pellet production plants in the southeastern part of the US. ¶¶46, 49. Enviva's headquarters are located in Bethesda, Maryland. At all relevant times, wood pellet production was Enviva's core operation. ¶47. Enviva touts itself as a "growth-oriented" ESG company with a "platform to generate stable and growing cash flows" and is primarily valued based on its purported environmental bona fides. ¶48.

The Company's long-term agreements are off-take contracts in which Enviva's European and Japanese customers agree to purchase, in advance, some quantity of Enviva's wood pellets that have not yet been made. ¶52. The contracts include a firm obligation to take a fixed quantity of product at a stated price and provisions that ensure Enviva will be made whole in the case of its customer's failure to accept all or a part of the contracted volumes or for termination by our customer. *Id.* Each contract defines the annual volume of wood pellets that the customer is required to purchase and the Company is required to sell. *Id.* According to Keppler, Enviva depends on its "[l]ong-term off-take contracts … to underpin substantial investment in new plant and port capacity." *Id.*

#### B.    Enviva's Reliance on Foreign Environmental Subsidies

Defendants Keppler and Meth founded Enviva to capitalize on the newfound cachet of putatively "green" – or environmentally-conscious – industries. ¶49. Keppler and Meth parlayed

4

this interest in renewable resources into a core business relationship with European and Japanese utilities seeking to increase their use of sustainable energy. ¶49. Indeed, although Enviva's operations are located in the Southeastern U.S., Keppler has been clear that "every single ton of what [Enviva] produce[s] is sold overseas to customers, under very long-term agreements, principally in Europe and Japan". ¶50.  Crucial to this end was the European Union ("EU")'s 2009 committed to obtaining 20 percent of its energy needs from renewable sources by 2020 – and burning wood for fuel was considered a zero-emissions renewable source, ***provided that the harvesting of that wood is counterbalanced by effective reforestation practices***. ¶51. A former Enviva Sustainability Analyst stated that actual sustainability was far less important to Enviva's business model than its ability to arbitrage loose regulations to the Company's advantage. ¶¶97-98.

### C.    Enviva Expands Its Core Operations

Enviva's long-term contracts with foreign customers funded the dramatic expansion of core operations. ¶52. In August 2010, Enviva acquired its first wood pellet processing plant, located in Mississippi, which increased its production capacity to 115,000 metric tons by the end of 2018. ¶53. In 2011, the Company's first wood pellet production plant, located in Ahoskie, North Carolina, became operational, with a capacity to produce 410,000 metric tons of wood pellets each year. ¶54. Enviva also acquired and leased deep-water marine terminals throughout the Southeast, which it used to ship wood pellets to its customers in Europe and Asia. ¶¶55, 57. In 2013, Enviva constructed additional wood pellet production plants in North Carolina with a capacity of 750,000 metric tons, and Southampton, with a capacity of 510,000 metric tons. ¶56. Enviva went public in 2015 and converted into a corporation on December 31, 2021. ¶46. By 2022, Enviva's ten pellet production plants had a combined production capacity of approximately 6.2 million metric tons

annually. ¶46.

## II.     ENVIVA MISLEADS INVESTORS

### A.     Enviva's "Green" Claims

Enviva procures wood from forest owners, processes that wood into pellets at its various production plants, and, finally, ships the usable wood pellet product to its overseas customers. ¶59. Enviva has claimed that all of its "***raw materials are byproducts of the sawmilling process or traditional timber harvesting, principally low-value wood materials, such as trees generally not suited for sawmilling or other manufactured forest products, tree tops and limbs, understory, brush, and slash that are generated in a harvest***." ¶61. Enviva defines "low-value wood" as:

> (a) wood fiber that is unsuitable for or rejected by the sawmilling and lumber industries because of small size, defects (e.g. crooked, knotty, etc.), disease or pest-infestation," (b) "the parts of trees that cannot be processed into lumber" (i.e. tops and limbs), (c) commercial thinnings or "harvests that promote growth of higher value timber by removing weaker or deformed trees," and (d) mill residuals consisting of chips, sawdust, or other wood industry by-products. [¶62]

To entice environmentally-focused investors, Enviva claimed that it "***does not take sawtimber***," and that its "***wood pellets are never made from sawtimber***," or the parts of trees suitable for sawmilling and typically used for construction or furniture-making purposes:

6



[¶63]

Enviva repeatedly reiterated its exclusive use of "low-value wood" in its wood pellet production process in promotional materials, SEC filings, media statements, YouTube videos, Twitter posts, both before and during the Class Period. *See, e.g.*, ¶¶64, 92, 156, 174, 180, 192, 196. The reality was the exact opposite: instead of scraps or waste, "most all" of the trees Enviva used to produce wood pellets were whole and half trees. ¶68.

## B.    The Truth Emerges

On October 12, 2022, the Blue Orca Report was published, and stated as follows:

Enviva claims to be a pure play ESG Company with a healthy, self-funded dividend and cash flows to provide a platform for future growth. We think this is nonsense on all counts.

…

We believe that Enviva is the latest ESG farce, a product of deranged European climate subsidies which incentivize the destruction of American forests so that European power companies can check a bureaucratic box. In an Orwellian twist, even though burning wood emits more $CO_2$ per unit of heat generated than any major energy source (including coal), an arcane carbon accounting loophole subsidizes European power companies to replace coal with wood pellets derived from deforestation in the United States. All in the name of climate activism.

In our opinion, Enviva is engaging in textbook greenwashing. Hidden GPS data embedded in Enviva's Track and Trace disclosures allowed us to geolocate the Company's harvests. Satellite imagery indicates that contrary to the Company's claims, in many instances Enviva is procuring wood from the widely condemned practice of clear-cutting. Former senior Enviva sustainability and procurement executives confirmed that this practice was endemic. We also think this explains the "**exodus of sustainability leadership**" from Enviva in 2021, including the recent resignations of both authors of the Company's prominent sustainability "white paper."

Ultimately, we think that any legitimate ESG investor or allocator should be embarrassed to own this stock. But in addition to evidence of greenwashing, Enviva's troubling cash flows, dangerous leverage, and unsustainable dividend only add further momentum to the short thesis, which is why we expect the stock price to contract significantly from Enviva's current nosebleed valuation.

1. **Hidden Metadata Reveals that Enviva Procures Wood from Clear-Cutting Forests**. Enviva publicly denies clear-cutting forests, the controversial practice of removing full swaths of forest which is widely condemned by ESG investors and climate change advocates. Although Enviva refuses to disclose to watchdogs or investors the exact location of its harvests, **when we analyzed the metadata from its Track and Trace database, we found embedded GPS coordinates**. We think that there is a reason Enviva tried to conceal this data. When we geolocate Enviva's harvests using these GPS coordinates, **satellite imagery reveals hundreds of images of clear-cut forests, suggesting that the practice is widespread and that Enviva is misleading investors**. We corroborated this with interviews of two former senior Enviva executives, who unequivocally stated that Enviva sources wood from clear-cutting. A former senior Enviva sustainability executive lamented that the practice was routine because **clear-cutting was cheaper than other more sustainable methods of harvesting**. Ultimately, multiple strands of independent evidence, from the statements of former senior executives to satellite imagery, indicate that Enviva is procuring wood from clear-cutting, a practice roundly rejected by ESG investors and expressly discouraged by EU sustainability guidelines.

2. **Enviva Drives Demand for Deforestation**. Enviva claims that harvesting forests for wood pellets is sustainable and produces lower greenhouse gas emissions than coal because it is only harvesting **waste** left by the timber industry, scraps that otherwise would be left to rot on the forest floor. Enviva insists that it does not drive demand for deforestation or influence the harvesting decisions of landowners because the Company claims to purchase on average less than 30% of the wood from each harvest. *The other 70%, according to Enviva, is higher value timber sold to other industries*. Yet Enviva's own Track and Trace data shows that the Company is violating this key **threshold** and is likely driving demand for deforestation.

a. **Enviva Track and Trace Data Contradicts Reported Harvesting Threshold**. On its website, Enviva publishes its Track and Trace data, including the total acreage harvested and the proportion of each harvest purchased by Enviva. This data shows that Enviva took greater than 30% of the volume of the harvest in over 2/3rds of the acreage harvested by the Company, including a substantial amount of acreage in which Enviva took 70-100% of the wood harvested. **According to a former high-level sustainability officer we interviewed, Enviva takes 70-90% of the volume in "plenty of tracks" because of the low prices for such wood**. The larger the proportion of a harvest taken by Enviva, the more likely Enviva's presence and payments are driving the economics that influence a decision of the landowner to cut the forest down. In our opinion, Enviva's own data provides compelling evidence that the Company is driving demand for deforestation and misleading investors regarding its procurement practices.

3. **Hardwood Forest Inventory is Decreasing Around Enviva's Facilities**. As evidence of the purported sustainability of its practices, Enviva claims that forest inventories are increasing in sourcing regions around its facilities. This is misleading, because it ignores that inventories of hardwood trees are decreasing, replaced by less expensive pine seedlings and negatively impacting forest biodiversity. Recent academic and scientific studies analyzing satellite imagery around Enviva's facilities concluded that it was **"very likely" that Enviva's pellet mill operations contributed to elevated rates of deforestation of deciduous trees in the area**. This ties directly to Enviva's valuation in that it directly undermines the Company's claims regarding the sustainability of its practices and its already controversial standing as an environmentally friendly stock suitable for ESG investors.

4. **"Exodus of Sustainability Leadership" in 2021**. Turnover at the CFO or chief accounting officer position can often be a sign of accounting shenanigans or even fraud, and smart investors tend to haircut a valuation when confronted with a cluster of high-profile resignations. In this case, three of Enviva's key sustainability officers resigned within months of each other in 2021. These were high profile departures, including the Chief Sustainability Officer and the co-author of the Company's sustainability white paper. Both were the public face of Enviva's attempt to attract ESG investment, making their departure akin to a CFO and chief accounting officer resigning at the same time. A former senior sustainability executive we interviewed stated that Enviva's C-level "were making too many decisions that ran contrary to the values that the Company was purporting to have." In our opinion, this lends further credence to our investment opinion that Enviva is greenwashing its ESG credentials. [¶200]

On this news, Enviva's stock price fell $7.74 per share, or 13.13%, to close at $51.23 per

share on October 12, 2022. ¶201. Next, on December 5, 2022, the conservation news web portal

*MONGABAY*, which reports on environmental science, energy, and green design, published the Whistleblower Report. ¶209. In the Whistleblower Report, a wood pellet plant management official with Enviva between 2020 and mid-2022 revealed that the following representations by the Company were "based on false pretenses": (i) that Enviva doesn't use big, whole trees, but only uses wood waste, in biomass production; (ii) that Enviva only sources wood from areas where trees will be regrown; and (iii) that Enviva doesn't contribute to deforestation. ¶210. On this news, Enviva's stock price fell $3.35 per share from the previous trading day's closing price, or 9.43%, to close at $55.44 per share on December 6, 2022. ¶211.

## ARGUMENT

## I.     APPLICABLE LEGAL STANDARDS ARE SATISFIED

### A.     Applicable Pleading Standards Do Not Warrant Dismissal

To assert a claim under Section 10(b) and Rule 10b-5 of the Exchange Act,[4] a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant, (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation (that is, the economic loss must be proximately caused by the misrepresentation or omission)." *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. 2009) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc.*, 552 U.S. 148, 157 (2008)). Defendants

---

[4] In addition to challenging whether Plaintiff has plead actionable misrepresentations and scienter under the Exchange Act, Enviva Defendants also contest Plaintiff's Securities Act claims on standing grounds. *See* Enviva Br. at 34-35. However, because Enviva Defendants' Securities Act arguments overlap substantially with those of the Underwriter Defendants, Plaintiff addresses those arguments in their Opposition to the Underwriter Defendants' Motion to Dismiss (ECF No. 63) filed herewith, and incorporates those arguments herein.

challenge only the misrepresentation and scienter elements.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint's allegations. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). For purposes of "a Rule 12(b)(6) motion to dismiss a §10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322 (internal citations omitted). The issue "is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims." *Quinteros*, 532 F. Supp. 2d at 767; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) (A "complaint need not 'make a case' against a defendant or '*forecast* evidence sufficient to *prove* an element' of the claim.") (internal citation omitted) (emphasis in original). The pleading standards applicable to certain elements of securities fraud claims are heightened, but far from insurmountable. A plaintiff is not required to plead detailed evidentiary matter or set forth facts which are in Defendants' exclusive possession. *See Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952 (E.D. Va. 2020).

Rule 9(b) requires that a complaint identify at least "the time, place, speaker and contents of the allegedly false statement." *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 770 (E.D. Va. 2015). Rule 9(b) must be considered in conjunction with the "short and plain statement" requirement of Rule 8(a). *Woodrow v. Vericrest Fin., Inc.*, No. AW-09-1612, 2009 U.S. Dist. LEXIS 110709, at *13 (D. Md. Nov. 30, 2009). Thus, "[i]n balancing these two policies, the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare an adverse pleading." *Id*. (internal quotation omitted). Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment or omission of material facts, as opposed to

11

affirmative misrepresentations, because an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." *Burt v. Maasberg*, No. ELH-12-0464, 2014 U.S. Dist. LEXIS 41982, at \*37 (D. Md. Mar. 28, 2014) (internal quotations and citations omitted).

The PSLRA also imposes three pleading requirements with respect to falsity and scienter, all of which are satisfied here. First, as with Rule 9(b), a plaintiff must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *See* 15 U.S.C. § 78u-4(b)(1). If an allegation regarding a statement or omission is made on information and belief, the complaint must allege "sufficient facts to permit a reasonable person to find that . . . the defendant made a false or misleading statement." *Hunter*, 477 F.3d at 173 (construing 15 U.S.C. § 78u-4(b)(1)).  "If the plaintiff fails to allege *all* facts but does allege *sufficient* facts to support a *reasonable belief* in the allegation that the defendant's statement was misleading, the court should deny the Rule 12(b)(6) motion as to this 'misrepresentation' element." *Id.* at 174 (internal citations omitted) (emphasis in original).

Finally, the PSLRA imposes a heightened standard for pleading scienter, requiring the allegation of particularized facts giving rise to a strong inference of scienter. *Tellabs*, 551 U.S. at 324.  However, as the Supreme Court has made clear, "[t]he inference…need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324 (internal citations omitted). Rather, an inference is strong if it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Even for scienter, a court must "accept all factual allegations in the complaint as true." *Id.* at 322. "Allegations of reckless conduct can satisfy the level of scienter necessary to survive a motion to dismiss." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (internal

12

citations omitted).

    **B.**    **Enviva Defendants' Attempt to Go Beyond the Pleadings Violates Controlling Authority**

Reflecting their incorrect view that any public document with even the slightest connection to Plaintiff's claims may be introduced to rebut the Complaint's allegations, *see* Enviva Br. at 4-5n.2, Enviva Defendants have submitted thirty-four (34) exhibits totaling 2,619 pages in connection with their motion to dismiss. *See* ECF Nos. 62-4 to 62-37. Twenty-two (22) of the thirty-one exhibits proffered by Defendant are not cited in the Complaint.[5] Defendants do not dispute that their statements are accurately reproduced in the Complaint, and Plaintiff takes no position on taking judicial notice of the language contained in documents relied upon as part of the moving allegations of the Complaint.[6] *See Zak*, 780 F.3d at 605 (holding that courts may consider documents "integral to and explicitly relied on in the complaint"). The Court may not, however, take judicial notice of the *truth* of any of those statements, or weigh such extrinsic evidence against the well-pleaded factual allegations in the Complaint.

On a Rule 12(b)(6) motion, courts must "focus their inquiry on the sufficiency of the facts relied upon by the plaintiffs in the complaint." *Id.* When faced with a "Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322 (internal citations omitted). Accordingly, "courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated

---

[5] Exs. 1, 4, 6, 9-12, 16-18, 20-31.

[6] Exs. 2-3, 5, 7-8,13-15, 19, 32-34.

into the complaint." *Zak*, 780 F.3d at 605 (internal quotation marks and citations omitted). Documents are not to be considered unless they are "integral to and explicitly relied on in the complaint." *Id.* at 607-08. The only exception to this rule is "narrow." *Id.* at 607.

Although judicial notice may be had of facts "not subject to reasonable dispute," where "plaintiffs do not challenge [the document's] authenticity", the document *cannot* be used "as evidence contradicting the complaint." *Id.* (internal quotation marks and citations omitted). *See also Feinberg v. T. Rowe Price Group, Inc.*, No. MJG-17-0427, 2018 U.S. Dist. LEXIS 140709, at *10 (D. Md. Aug. 20, 2018) (refusing to take judicial notice of document which "is not referenced in the Complaint and is offered only for the purpose of contradicting Plaintiffs' allegations."). In those cases where "a court considers generally known or undisputed facts at the motion to dismiss stage, it must identify the fact or facts it is noticing, and the facts must be construed 'in the light most favorable to the plaintiffs.'" *see also Tchatchou v. India Globalization Capital, Inc.*, 2021 U.S. Dist. LEXIS 16665, *13-14 (D. Md. Jan. 28, 2021) (citing *Zak*, 780 F.3d at 607)).

This District has explicitly recognized the Ninth Circuit's decision in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), "in which the Ninth Circuit clarified the proper use of judicial notice and incorporation-by-reference in securities litigation." *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 667 n.3 (D. Md. 2018); *see also Tchatchou*, 2021 U.S. Dist. LEXIS 16665 at *14 (*citing Khoja* approvingly)). In *Khoja*, the Ninth Circuit noted that it had previously held that "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." 899 F.3d at 1002 (internal quotation omitted). If a document "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002. Furthermore, *Khoja* held

14

that to the extent a court does deem an extrinsic document incorporated by reference into the complaint, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.*

Where, as here, the content asserted in documents subject to judicial notice is disputed, a court can consider the fact of publication, but not the truth of the asserted content. *United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018); *Khoja*, 899 F.3d at 1000 ("a court cannot take judicial notice of disputed facts contained in [] public records."). Judicial notice must not "be used as an expedient for courts to consider 'matters beyond the pleadings' and thereby upset the procedural rights of litigants to present evidence on disputed matters." *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015) (quoting *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local*, 728 F.3d 354, 360 (4th Cir. 2013)). . Aside from the "narrow exception," for "integral and explicitly relied on" documents, if a court considers documents or facts outside the four corners of the complaint, it must convert the motion into one for summary judgment. *Zak*, 780 F.3d at 607-08. Conversion is not appropriate unless the parties have had an opportunity to conduct reasonable discovery. *Id.* at 606 (citing Fed. R. Civ. P. 12(b), 12(d), and 56). The PSLRA discovery stays discovery in securities actions before a court has determined the sufficiency of the complaint. 15 U.S.C. §78u-4(b)(3)(B).[7]

---

[7] None of Defendants' cited cases justify their improper attempt to dispute well-pleaded allegations through thousands of pages of extraneous documents. *In re Hum. Genome Scis. Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 753 n.1 (D. Md. 2013) references *Tellabs*, which makes clear that courts considering a Rule 12(b)(6) motion in a securities fraud action must "accept all factual allegations in the complaint as true." 551 U.S. at 322. *In re Inspire Pharms., Inc. Sec. Litig.*, 515 F. Supp. 2d 631, 637 (M.D.N.C. 2007) and *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d

15

**SEC Filings (Exs. 1-4, 13, & 15-30)**

Defendants' Exhibits 1-4, 13, and 15-30 are U.S. Securities and Exchange Commission ("SEC") filings, which are properly subject to judicial notice for the fact of their filing, but not the truth of their contents. *See* ECF Nos. 62-4 & 62-16, 62-18-61-33. "Judicial notice is appropriate of the content of S.E.C. filings, to the extent that this establishes that the statements therein were made, and the fact that these documents were filed with the agency.... The Court does not take judicial notice of the truth of the underlying facts in such public documents." *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 653 n.7 (D. Md. 2012). The suggestion that Defendants' SEC filings should be accepted by this Court as true is particularly nonsensical where, as here, Plaintiff has specifically alleged that certain statements in Defendants' SEC filings are materially false and/or misleading. *See*, *e.g.*, ¶¶111-113, 134, 163, 184-186, 190.

**Other Exhibits (Exs. 5-12, 14, & 31-34)**

Defendants also request that the Court consider a host of publications "for the purpose of indicating what information was available to investors at and following the time of their publication." Enviva Br. at 5n.2 (citing Exs. 5-12, 14, and 31-34). In reality, Defendants attach these collateral documents to weave a factual counter-narrative and hope that the Court usurps the role of the jury and weighs those facts against the Complaint's well-pled allegations. *See*, *e.g.*, Enviva Br. at 10 (citing Ex. 6 (report issued by a market intelligence and analytics firm)) to rebut

---

Cir. 2006) (cited by *Johnson v. Pozen, Inc.*, 2009 U.S. Dist. LEXIS 12765, *6 (M.D.N.C. Feb. 19, 2009) both predate *Tellabs* and must be construed in light of the Supreme Court's clear instruction in that case.  In addition to contravening *Tellabs*, any defense based on investors' access to publicly-available information is beyond the scope of a Rule 12(b)(6) motion. *See KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. 0:15-CV-02393-MGL, 2016 U.S. Dist. LEXIS 96499, at *36 (D.S.C. July 25, 2016).

16

Plaintiff's allegations that Defendants misled investors regarding Enviva's CO2 emissions); *see also id.* at 12-13 (citing Exs. 10-11 (*Wall Street Journal* and *New York Times* articles) to insinuate that Defendants could not have misled investors about the impact of biomass on GHG absent a consensus regarding the nature of that impact); *id.* at 15 (citing Ex. 9 (general principles of "Biomass Carbon Accounting")) to rebut the Complaint's allegations concerning Enviva's procurement practices).

It is a matter of binding precedent that such disputed facts may not be resolved on a motion to dismiss. *See Townsend*, 886 F.3d at 444; *see also Ohio Valley Enctl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Circ. 2009). Defendants' summary judgment-style motion makes clear that this action is ripe for discovery, which the Court should order the parties to commence without further delay.

## II. THE COMPLAINT ADEQUATELY PLEADS MATERIAL MISREPRESENTATIONS AND OMISSIONS

### A. Plaintiff Identifies Misrepresentations and Omissions with Particularity

A plaintiff is "not required to prove the falsity of the alleged misrepresentations at the pleading stage." *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 601 (E.D. Va. 2015) (internal quotation marks and citations omitted). Instead, to allege falsity , a plaintiff need only identify sufficient facts "to support a reasonable belief in the allegation that the defendant's statement was misleading." *See, e.g., Hunter*, 477 F.3d at 174; *Burt,* 2014 U.S. Dist. LEXIS 41982, at *40-41; *Epstein v. World Acceptance Corp.*, No. 6: 14-cv-01606-MGL, 2015 U.S. Dist. LEXIS 64494, at *16-17 (D.S.C. May 18, 2015). Put another way, the plaintiff must "'allege facts and circumstances that, drawing reasonable inferences in their favor, would render their claims [of falsity] plausible.'" *Kiken*, 155 F. Supp. 3d at 601 (quoting *Nieman v. Duke Energy Corp.*, No.

17

3:12CV456, 2013 U.S. Dist. LEXIS 110693, at *8 (W.D.N.C. July 26, 2013) (brackets in original)). Plaintiff's Complaint easily satisfies that standard.

Plaintiff adequately alleges that Defendants made numerous false and misleading statements of material fact, chiefly concerning the Company's wood procurement and production. Plaintiff's allegations clearly satisfy Rule 9(b). The Complaint identifies each statement in question, by whom, when and how they were made, and why Plaintiff contends each was misleading. *See* 15 U.S.C. § 78u-4(b)(1).

### 1. Misrepresentations and Omissions Concerning Enviva's Sourcing of its Wood Pellets from Whole Trees

The Complaint alleges that Enviva's alleged reliance on "***low-grade wood fiber … procure[d] [a]s a byproduct of sustainable forestry operations***", "***low-grade wood***" (¶156), and "***sustainably produced wood pellets***" (¶¶129, 149), as well as its claim to be "***creating a market for low value wood***" (¶132), and assertion that "***[e]very piece of fiber that's taken into our program is low value wood***, …. ***If we did not create this service, it would be left to rot on the forest floor and would be left to create forest fires***" (¶192) were misleading because instead of scraps or waste, "most all" of the trees Enviva used were whole or halved trees. ¶¶68-69. As FE1 verified, the amount of wood that Enviva procured from scraps or waste was close to ***zero***. *Id.*

In response, Enviva Defendants attempt to refute the Complaint's well-sourced allegations, arguing that Enviva "never said that it never uses whole trees" (Enviva Br. at 16). This is wrong for two reasons. First, Plaintiff need only allege facts which, accepted as true, would allow a plausible belief that the statements were false or misleading. Here, Enviva expressly said it used uses "***tops***" and "***limbs***" as opposed to "trunks" for wood, ¶191, and avoided use of sawtimber, ¶163. Ignoring the plain meaning and impact of the terms used, Enviva Defendants'

18

assert that there is an alternative inference can be drawn from those same words that might be technically accurate. Enviva Br. at 16-17. That is not the legal standard. A reasonable belief of falsity need only be supported by sufficient facts to render it plausible; it need not be the only inference that can be drawn from the statements, and need not be "objectively verifiable." *See, e.g., Burt*, 2014 U.S. Dist. LEXIS 41982, at \*65 (holding that outright denials of Complaint allegations have no place in a Rule 12(b)(6) motion). Further, the only proper inquiry is whether, read as a whole, Defendants' statements "would have misled a reasonable investor about the nature of the securities." *In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 614, 625 (D. Md. 2010) (citations omitted).

Defendants' backup argument demands an even more contorted inference, also improperly drawn against the Plaintiff. Enviva Defendants argue that they could be construed to have disclosed use of *whole* trees "in certain circumstances" by stating, *inter alia*, that "procured wood fiber consists of . . . trees . . .'" in the Company's SEC filings. *See* Enviva Br. at 18. But, the quoted language does not say "whole trees," and the "tops" and "limbs" from which Enviva claimed to have specifically sourced its wood pellets are obviously also parts of "trees." Thus, this statement is itself misleading and could not possibly have apprised the market of the truth about Enviva's wood sourcing. Regardless, such "truth-on-the-market" defenses are inappropriate at the pleading stage because they necessitate fact-specific determinations of whether corrective information was conveyed to the public information conveyed to the public "'with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by' the alleged misstatements." *KBC Asset Mgmt. NV*, 2016 U.S. Dist. LEXIS 96499, at \*36 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d at 154, 167-68 (2d Cir. 2000).

19

Moreover, the large stock drops cited in the Complaint demonstrate that the truth was *not* known to investors. *See*, *e.g.*, *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 362 (S.D.N.Y. 2006) (4.3% share price decline "supports attributing the loss to [the company]'s concealment of its investment risk"). Here, the much larger 13.13% drop alleged on the disclosure of such practices by the Blue Orca Report similarly demonstrates that the truth was previously concealed. ¶201. And while Defendants malign Blue Orca as a "short seller" but fail to cite any authority holding that reliance on so-called "short sellers" is prohibited, or presents grounds for dismissal. *See* Enviva Br. at 10n.10. In fact, "courts have found that well-pled independent and particularized facts corroborate those attributed to anonymous sources in short-seller reports, courts have sustained such complaints." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020). The Blue Orca Report is corroborated by a whistleblower, the independent *MONGABAY* report, and several former Enviva employees. ¶¶65-89, 93-98.[8]

### 2. Misrepresentations and Omissions Concerning Enviva's GHG Reduction

As alleged in the Complaint, Enviva, during the Class Period, claimed that, "we can mitigate GHG emission by substituting #biomass for fossil fuels" (¶142) and touted "substantial GHG reductions" (¶164). These claims were false because Enviva's practices did not lower carbon emissions, and in fact involved higher greenhouse gas emissions than coal, in addition to the fact that Enviva's practices did not in any way mitigate climate change.

Enviva Defendants do not dispute that burning their pellets emits more CO2 per unit of

---

[8] None of the specific allegations set forth by the Blue Orca Report or the Whistleblower Report are actually refuted by the extraneous third-party report that Enviva Defendants submitted, which appears largely to be based on propaganda culled from Enviva's own website. *See* ECF No. 62-9 (Impact Research Report neither incorporated or referenced in the Complaint).

heat than natural gas or coal, exactly as the Complaint alleges, or that many of their statements spoke generally about greenhouse gas emissions.  Instead, they claim that some of the statements reference "lifecycle GHG emissions of [its] customers" and there is a way to calculate "lifecycle GHG emissions" that could render that statement technically true.  *See* Enviva Br. at 10. Defendants miss the point.  At the pleading stage, all reasonable inferences must be drawn in Plaintiff's favor.  *Kiken*, 155 F. Supp. 3d at 601. That Defendants' deny any falsehood is "of no moment" in this Rule 12(b)(6) motion.  *Burt*, 2014 U.S. Dist. LEXIS 41982, at *65.  It is sufficient for now that Plaintiff pleads sufficient facts to support a "reasonable belief" of misrepresentation. *Hunter*, 477 F.3d at 174.

The Court should also decline to credit Enviva Defendants' newfound view of their greenhouse gas-related statements as mere "opinions." *See* Enviva Br. at 13. As a threshold matter, Defendants did not qualify their greenhouse gas-related utterances as opinions or matters of public debate during the Class Period, but disseminated them as facts. *See*, *e.g.*, ¶¶117, 119, 142, 159, 161, 164, As the Supreme Court explained in *Omnicare*, opinions that omit material facts are actionable. *See* 575 U.S. at 189. The same is true with respect to Enviva Defendants' arguments regarding policies directly implicated by the Company's then-current practices. *See* Enviva Br. at 21-22. Accordingly, Enviva Defendants were not "'announcing rules'" (*see* Enviva Br. at 22, *citing In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 755, 756 (S.D.N.Y. 2017)) but were instead describing matters of present fact.

### 3.  Misrepresentations and Omissions Concerning Forest Sustainability

As alleged in the Complaint, Enviva, during the Class Period, claimed to have contracts with private landowners to collect the low-value wood, and its sourcing contracts require

21

landowners to "replant or regenerate the forests," otherwise, Enviva said that it did "***not accept any wood from a harvest without this information and commitment***."  ¶¶92, 168 (emphasis in Complaint). Enviva further claimed that "***our sponsor continues to work with our local partners to conserve forest land and support forest growth***." ¶115. Eviva also claimed, more broadly, to further a "healthy forest products industry" with concomitant "increases in carbon stocks."  ¶¶116-117. Enviva, however, did not take any real steps to curtail non-sustainable uses by the Company's "local partners" and, in fact, procured wood from environmentally-destructive clear-cutting. ¶¶93-94, 200.

Enviva Defendants attempt to discount Plaintiff's plausible allegation that the Company's treatment of landowners was very different than what it told investors. *See* Enviva Br. at 21-22. Specifically, Enviva Defendants claim these statements reflect the unawareness of a single employee. *Id.* Enviva Defendants omit, however, that this employee was a Sustainability Analyst employed at Enviva's headquarters who worked in close proximity to Defendant Jenkins, Enviva's Chief Sustainability Officer. ¶¶25, 93. The employee statements are also corroborated by disclosures at the end of the Class Period, which revealed that Enviva was not engaging in the sustainable land practices that it claimed. ¶200. They should thus be credited. *See In re Trex Co., Inc. Sec. Litig.*, 454 F. Supp. 2d 560, 573 (W.D. Va. 2006) ("A confidential witnesses' testimony can be used in pleading under the PSLRA so long as the testimony involves facts of which the witnesses had personal knowledge").

Next, Enviva Defendants suggest that their statements concerning the Company's purported sustainability commitments are "puffery." Enviva Br. at 19-20. But, as alleged in the Complaint, those representations were contrary to concrete information in Defendants' possession, ¶¶65-89, 93-98, and are therefore actionable. *City of Sterling Heights*, 423 F. Supp. 2d at 360

(finding statements actionable "when defendants were aware or should have been aware of contrary information"); *see also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992) (stating that descriptors such as "adequate," "conservative," "cautious," and "solid" are actionable where defendants "intentionally or recklessly omit[] certain facts contradicting these representations"). For that reason, Enviva Defendants' reliance on cases like *Longman v. Food Lion*, 197 F.3d 675, 684 (4th Cir. 1999) ("rosy statements" about employee relations) is misplaced here: Enviva's statements about sustainability commitments did not occur in a vacuum; rather, they accompanied other, even more concrete representations on the same subject. As such, they would not have been easily dismissed by investors.

### B. Plaintiff Has Adequately Alleged Materiality

In order for a statement or omission to be considered material, there must be "a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 343 (4th Cir. 2003) (quoting *Longman*, 197 F.3d at 682). A Section 10(b) claim may be dismissed on materiality grounds only where the information alleged to be omitted or misrepresented is "trivial," or so basic that any investor could be expected to know it. *Ganino*, 228 F.3d 154, 162, 165 (2d Cir. 2000).

"In general, the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the court on a motion to dismiss. Thus, [courts] review the complaint only to determine that it pleads the existence of such statements and presents a plausible jury question of materiality." *Dunn v. Borta*, 369 F.3d 421, 427 (4th Cir. 2004) (internal quotation marks and citations omitted). *See also SEC v. Bank of Am. Corp.*, No. 3:13-cv-447-

MOC-DSC, 2014 U.S. Dist. LEXIS 63788, at *8 (W.D.N.C. Mar. 31, 2014).

Even assuming that materiality was properly at issue on a Rule 12(b)(6) motion, Defendants' statements and omissions about the Company's core product were undeniably material. Given Enviva's reliance on environmental subsidies which hinged on the very matters misrepresented, it cannot be argued that the disclosure of the Company's flagrant greenwashing was so obviously irrelevant to investors that as a matter of law it could not have altered the total mix of information available. *Ottmann*, 353 F.3d at 343.   And, that the statements involved Enviva's core business also shows materiality. *See, e.g., Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1179 (9th Cir. 2009) (allegations regarding adverse effects of company's main product were material); *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 774 (S.D. Tex. 2003) (statements regarding patent protection for a company's main products were "clearly material"). In addition, Enviva was able to raise gross proceeds of $346 million though a secondary offering premised on Defendants' ¶187.

Likewise, the significant stock drops of 13.13% and 9.43%, respectively – upon the revelations alleged in the Complaint further demonstrate materiality. ¶¶201, 211; *see Patel v. L-3 Commc'ns Holdings, Inc.*, No. 14-CV-6038 (VEC), 2016 U.S. Dist. LEXIS 42978, at *61-62 (S.D.N.Y. Mar. 30, 2016) (12% stock drop suggested "materiality of misstatements"); *see also City of Pontiac Gen. Employees' Ret. Sys.*, 875 F. Supp. 2d 359, 368-69 (S.D.N.Y. 2012) (finding, among other things, that a 10% stock price drop was indicative of materiality).

## III.    PLAINTIFF'S COMPLAINT PLEADS A STRONG INFERENCE OF SCIENTER

The standard for pleading this mental state, though elevated, is not as high as Defendants suggest. *See Tellabs*, 551 U.S. at 319-324. The inference that Defendants acted culpably "need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences."

24

*Id.* at 324. Rather, a strong inference of scienter is alleged so long as the inference is "at least as compelling as any opposing innocent inference." *Id.; see also Zak*, 780 F.3d at 606. Plaintiff's Complaint raises an inference of scienter that is far more compelling than any competing inference.

To evaluate scienter, courts "consider the scienter allegations holistically and accord those allegations the inferential weight warranted by context and common sense." *Zak*, 780 F.3d at 606 (internal citation and quotation omitted). Allegations of reckless conduct can suffice. *See Matrix Capital*, 576 F.3d at 181. So can "circumstantial evidence." *See Genworth,* 103 F. Supp. 3d at 783. Likewise, allegations "that the named individual defendant[] benefitted directly from the alleged fraud" can "support[] a strong inference of scienter." *Kiken*, 155 F. Supp. 3d at 605. "When making the assessment whether scienter has been adequately pleaded, it is prudent to keep in mind that the PSLRA does not require a plaintiff to prove his case in his complaint" and "a plaintiff generally must frame the facts. . . without the benefit of discovery." *Arnlund v. Deloitte & Touche LLP*, 199 F. Supp. 2d 461, 475 (E.D. Va. 2002).

The Fourth Circuit has held that scienter under the PSLRA may be alleged by "pleading not only intentional misconduct, but also recklessness," *Ottmann*, 353 F.3d at 344, and has defined recklessness as "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id*. at 343 (*quoting Phillips v. LCI Int'l, Inc*., 190 F.3d 609 , 621 (4th Cir. 1999)).

A.    **The Complaint Alleges Facts Demonstrating That Defendants Knew, or Recklessly Ignored, Material Adverse Information**

A defendant's issuance of statements while knowing facts "suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter." *Aldridge v. A.T. Cross*, 284

25

F.3d 72, 86 (1st Cir. 2002).   Plaintiff's interview with the *MONGABAY* whistleblower as cited in the Complaint confirmed that Enviva used **at least 90%** whole trees – including giant ones – in its pellets, the opposite of what the Company advertised. ¶¶84-85, 87. The whistleblower also stated that it was apparent internally that the Company used whole trees at its production plant in Southampton County, Virginia because he worked in the wood yard there and saw the trees firsthand. ¶87. The whistleblower also credibly stated that Defendant Calloway's claims to CBS News that Company exclusively used leftover waste wood were lies. ¶79. Other former Enviva employees also confirmed that it was internally known that Enviva used whole trees in its pellets, and referred to Enviva's claims about using only scraps and waste as a "story" at odds with the truth. ¶79. Likewise, at a Q2 2022 meeting among Enviva's top executives, senior leaders – including directors, vice presidents and senior vice presidents – voted that Enviva stop stating publicly that it did not use whole trees, which was false, only to be overridden by executive leadership. ¶81. Finally, at all times, Enviva Defendants held themselves out as intimately familiar with Enviva's wood-harvesting and processing operations and spoke to them in detail. ¶¶95, 108, 119, 123, 176, 198. That is "powerful evidence" of their scienter. *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009).

## B.  Defendants Had Unique Financial Motives to Greenwash Enviva's Practices

As the Supreme Court has explained, however, there is no need to plead a motive to commit securities fraud. *See Tellabs*, 551 U.S. at 325. But even if there were, the Complaint's motive and opportunity allegations are far stronger than those in most cases.  Most glaringly, Defendants were motivated to greenwash Enviva's operations because, if found to be less than carbon neutral, they stood to lose the foreign subsidies that Enviva was admittedly reliant upon. ¶159. Conversely, Defendants were motivated to use whole trees because it simply was not possible to make usable

pellets using scraps.  ¶89.  In order to produce pellets with sufficient density, Enviva needed the whole tree. *Id.*  That disclosing its actual use of whole trees would – and ultimately did – threaten the subsidies upon which Enviva relied gave Enviva Defendants powerful motivation to downplay their continued use of whole trees.

### C.  The Core Operations Theory Supports a Strong Inference of Scienter

For purposes of scienter, senior executives may be presumed to know material facts about their company's "core operations." *See Kiken*, 155 F. Supp. 3d at 606. "[S]uch allegations are relevant to the court's holistic analysis of scienter." *See*, *e.g.*, *Yates v. Mun. Mortg. & Equity, LLC,* 744 F.3d 874, 890 (4th Cir. 2014); *Genworth*, 103 F. Supp. 3d at 784 (same).  Here, the misrepresentations went directly to Enviva's core operation -- wood pellet production, ¶¶3, 47/ Enviva Defendants do not deny that irrefutable fact. *See* Enviva Br. at 31-32 (discussing Plaintiff's core operations allegations). Instead, they object that a company's "general line of work" cannot be deemed its core operation. *See id.* at 32. Wood pellet production, however, is a highly *specific* activity that Enviva repeatedly touted as its primary undertaking. *See, e.g.,* ¶¶63, 125, 156, 193; *see also* ¶57. It would be absurd to assume that Enviva Defendants were unaware of how their wood pellets were procured and produced, especially when the manner of procurement and production had the ability to make or break the Company's entire income stream if it failed to comport with European or Japanese environmental targets. Therefore, the "core operations" theory also supports a strong inference of scienter.

### IV.    THE COMPLAINT ADEQUATELY ALLEGES CONTROL PERSON CLAIMS UNDER § 15 OF THE SECURITIES ACT AND § 20(a) OF THE EXCHANGE ACT

Enviva Defendants do not challenge Plaintiff's "control person" claim, argue only that the Complaint's §§ 15 and 20(a) claims are inadequate for their alleged failure to plead a primary

violation of §§ 11 and 10(b). *See* Enviva Br. at 35. Because Plaintiff has adequately pleaded underlying violations, the Complaint also adequately pleads §§ 15 and 20(a) violations with respect to the Officer and Director Defendants

## CONCLUSION

Because Defendants have utterly failed to show any pleading deficiency in Plaintiff's Complaint, their Rule 12(b)(6) motion should be denied in its entirety, and the parties should be directed to commence discovery without further delay.

Dated:  July 3, 2023                              Respectfully submitted,

**POMERANTZ LLP**

*/s/ Louis C. Ludwig*
Joshua B. Silverman (*pro hac vice*)
Louis C. Ludwig (*pro hac vice*)
Genc Arifi (*pro hac vice*)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 229-8811
Email:  jbsilverman@pomlaw.com
          lcludwig@pomlaw.com
          garifi@pomlaw.com


**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com


*Attorneys for Lead Plaintiff*


Daniel S. Sommers (Md. Bar No. 15822)
**COHEN MILSTEIN SELLERS &**

28

**TOLL PLLC**
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
Email: dsommers@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East Suite 600
Los Angeles, California 90067
Telephone:  (310) 692-8883
Email:   lesley@portnoylaw.com

*Additional Attorneys for Lead Plaintiff*