**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **DAVID FAGEN**, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> **ENVIVA INC.,** et al. <br><br> Defendants. | **Case No. 8:22-cv-02844-DKC** |

**THE ENVIVA DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................................... 1

II.  ARGUMENT ........................................................................................................... 2

    A.  The exhibits to Defendants' Motion to Dismiss are properly before the
    Court and necessary to evaluate Plaintiff's allegations in their full context ........... 2

    B.  All of Plaintiff's claims should be dismissed because the Complaint fails
    to allege an actionably misleading statement .......................................................... 3

        1.  Category A: Statements About Greenhouse Gas Emissions
           (Statements 1-16). ........................................................................................ 3

        2.  Category B: Statements About Forest Growth (Statements 17-24). ........... 6

        3.  Category C: Statements About Enviva's Sources of Wood
           (Statements 25-34). ..................................................................................... 7

        4.  Category D: Statements About Enviva's Commitment to
           Sustainability (Statements 35-47). .............................................................. 9

        5.  Category E: Statements About Policies (Statements 48-50) ..................... 11

        6.  Category F: SOX Certifications (Statement 51). ...................................... 12

    C.  Plaintiff fails to satisfy the PSLRA's high standards for pleading scienter ......... 12

        1.  The Complaint's failure to assert any well-pled motivation to
           defraud further undermines Plaintiff's attempt to allege scienter ............. 14

        2.  Plaintiff cannot rescue his deficient scienter allegations by
           invoking the "core operations" doctrine. ................................................. 15

III.  CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boykin v. K12, Inc.*,
54 F.4th 175 (4th Cir. 2022) ................................................................................. 14

*Browning v. Amyris, Inc.*,
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014).......................................................... 15

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
423 F. Supp. 2d 348 (S.D.N.Y. 2006) ........................................................................ 9

*Freeland v. Iridium World Commc'ns, Ltd.,*
545 F. Supp. 2d 59 (D.D.C. 2008) .......................................................................... 10

*Greenhouse v. MCG Cap. Corp.*,
392 F.3d 650 (4th Cir. 2004) .................................................................................... 2

*Howard v. Arconic Inc.*,
395 F. Supp. 3d 516 (W.D. Pa. 2019).................................................................... 10

*In re Acterna Corp. Sec. Litig.*,
378 F. Supp. 2d 561 (D. Md. 2005)........................................................... 2, 12, 13, 14

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................................... 13

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ......................................................... 10

*In re DXC Tech. Co. Sec. Litig.*,
2020 WL 3456129 (E.D. Va. June 2, 2020), *aff'd sub nom. KBC Asset Mgmt. NV v.
DXC Tech. Co.,*19 F.4th 601 (4th Cir. 2021)............................................................. 10

*In re First Union Corp. Sec. Litig.*,
128 F. Supp. 2d 871 (W.D.N.C. 2001) .................................................................... 13

*In re InvenSense, Inc. Sec. Litig.*,
2017 WL 11673462 (N.D. Cal. Apr. 12, 2017) ......................................................... 4

*In re Volkswagen AG Sec. Litig.*,
2023 WL 2505539 (E.D. Va. Mar. 14, 2023) ............................................................ 7

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) .................................................................................... 15

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013) ...................................................................................... 9

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ................................................................................. 14

*Longman v. Food Lion, Inc.*,
  197 F.3d 675 (4th Cir. 1999) ...................................................................................... 11

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018) ......................................................................... 7

*Phillips v. LCI Int'l, Inc.*,
  190 F.3d 609 (4th Cir. 1999) ............................................................................... passim

*Recupito v. Prudential Sec., Inc.*,
  112 F. Supp. 2d 449 (D. Md. 2000) .............................................................................. 8

*SAS Inst., Inc. v. World Programming Ltd.*,
  952 F.3d 513 (4th Cir. 2020) ........................................................................................ 6

*Shah v. GenVec, Inc.*,
  2013 WL 5348133 (D. Md. Sept. 20, 2013) ................................................................. 3

*Smith v. Circuit City Stores, Inc.*,
  286 F. Supp. 2d 707 (E.D. Va. 2003) ......................................................................... 14

*Tawes v. Bd. of Educ.*,
  2017 WL 6313945 (D. Md. Dec. 11, 2017) ................................................... 3, 6, 10, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................... 1

*Yates v. Municipal Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ...................................................................................... 15

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B) .............................................................................. 10, 12, 14

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................... 3

## I.   PRELIMINARY STATEMENT

As the U.S. Supreme Court has noted, "Congress enacted the Private Securities Litigation Reform Act of 1995" as a "check against abusive litigation . . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  To achieve this purpose, the "PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Id.* (quotations omitted).  The Complaint here satisfies neither *Tellabs* requirement. To the contrary, Plaintiff's Opposition to Defendants' Motion to Dismiss[1] ("Opposition" or "Opp.") (Dkt. No. 64) only confirms that the Complaint relies on fantastic assertions devoid of factual support.  The Complaint should be dismissed with prejudice for three primary reasons.

*First*, Plaintiff has failed to identify a single materially misleading statement made by the Defendants. In the Complaint, Plaintiff's allegations centered on a theory that Defendants took what Plaintiff believes to be the wrong side of an ongoing public debate over the environmental benefits of using wood pellets to generate electricity and heat.  But, as Defendants explained in the Motion to Dismiss, such scientific disagreement is not actionable under the federal securities laws. In response, Plaintiff all but abandons this theory.  In its place, he shifts focus to a contention that Enviva sourced "whole trees" to generate wood pellets.  But that contention fares no better.  After all, Plaintiff has identified no statement in which Defendants denied ever using whole trees.  To the contrary, Defendants repeatedly disclosed that they ***did*** source intact trees—including in documents Plaintiff himself quotes in the Complaint and Opposition.  Plaintiff cannot allege an actionable misstatement under these circumstances, requiring dismissal of each of his claims.

*Second*, even if Plaintiff could identify a materially misleading statement, his Exchange

---

[1] Capitalized terms not defined herein have the meaning given to them in Defendants' Motion to Dismiss (Dkt. # 62).

Act claims would fail for failure to allege scienter with particularity. To survive dismissal, Plaintiff was required to plead detailed facts showing how and when each Defendant learned information contrary to the statements at issue. The Opposition makes no attempt to identify such facts, thus implicitly conceding that Plaintiff has not pled any, which dooms his Exchange Act claims.

*Third*, as the Underwriter Defendants explain at length in their reply brief, Plaintiff fails to allege standing to bring his Section 11 claims. Each of Plaintiff's claims thus fail on multiple grounds. The Complaint should be dismissed with prejudice.

## II.   <u>ARGUMENT</u>

### A.   The exhibits to Defendants' Motion to Dismiss are properly before the Court and necessary to evaluate Plaintiff's allegations in their full context.

In a federal securities action, a plaintiff cannot avoid dismissal based "on mischaracterizations of the public record, exaggeration of a single statement, and isolation of that statement from its context and from the wealth of other information publicly available when it was made." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 615 (4th Cir. 1999) (affirming dismissal). Rather, "allegedly fraudulent corporate statements must be examined in context and in light of the 'total mix' of information made available to investors." *Id.*

To comply with this mandate, federal courts evaluating a motion to dismiss in a securities action routinely go beyond the complaint to "examine the other information that was publicly available to reasonable investors at the time the defendant made statements plaintiffs alleged were fraudulent." *In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 571 (D. Md. 2005).[2] Here, the exhibits to Defendants' Motion to Dismiss are presented for exactly this purpose: to enable the Court "to assess what the market knew at particular points in time." *Shah v. GenVec, Inc.*, 2013

---

[2] *See also Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 658 (4th Cir. 2004) (courts may consider "those materials relied upon by the [plaintiffs] in formulating their complaint and those materials publicly available to reasonable investors").

WL 5348133, at *1 n.2 (D. Md. Sept. 20, 2013). It is well-established in this District that review

of such materials is appropriate at the Motion to Dismiss stage. *Id.* As this Court has noted,

"district courts in this circuit routinely take judicial notice of newspaper articles, analysts' reports,

and press releases" for this purpose "even where the materials were not specifically referenced in

the complaint". *Id.* The Court should thus overrule Plaintiff's objections and review the exhibits

to Defendants' Motion to Dismiss to assist the Court's resolution of the Motion.[3]

> **B.      All of Plaintiff's claims should be dismissed because the Complaint fails to allege an actionably misleading statement.**

As the Memorandum explains, each of Plaintiff's claims depends on Plaintiff having

sufficiently pled a materially false or misleading statement. Because Plaintiff has failed to do so

in compliance with the strict pleading requirements of the PSLRA and Rule 9(b), the Complaint

should be dismissed in its entirety. *See* Mem. at 8-25.

> **1.      Category A: Statements About Greenhouse Gas Emissions (Statements 1-16).**

Although the Complaint identified 16 Category A statements, Plaintiff's Opposition

defends only two of them.[4] First, Plaintiff points to a Twitter post announcing and linking to the

Enviva Case Study Report by Boundless Impact. Opp. at 20 (citing ¶ 142 (Statement 7)). The

tweet states that "if requirements for good #biomass are met – we can mitigate GHG emission by

substituting #bioenergy for fossil fuels for energy production." ¶ 142. Second, Plaintiff points to

the phrase "Substantial GHG Emissions Reductions" in the title of a PowerPoint slide detailing

---

[3] For the avoidance of doubt, even if the Court declines to consider the exhibits, it can and should still dismiss Plaintiff's claims. *See, e.g.*, Mem. at 25-35 (Defendants' scienter and standing arguments, which are fatal to Plaintiff's claims and do not rely in any way on any of the exhibits).

[4] As to the other statements in this category (Statements 1-6, 8-12, and 14-16), Plaintiff's silence should be taken as a concession that they are inactionable. *See Tawes v. Bd. of Educ.*, 2017 WL 6313945 , at *6 (D. Md. Dec. 11, 2017) ("By failing to respond to Defendants' arguments, Plaintiff concedes these claims to Defendants.").

the "Lifecycle GHG Emissions Reduction" of using wood pellets instead of fossil fuels for energy and heat production. Opp. at 20 (citing ¶ 164 (Statement 13)); Enviva Mar. 1, 2021 Investor Presentation at 4 (*available at* https://tinyurl.com/3cu22scy). Plaintiff argues that he need only plead facts sufficient to support a "reasonable belief" that these statements were misleading. Opp. at 21. But Plaintiff has not pled such facts and the Opposition points to none. Instead, Plaintiff states only that, at the point of "burning," Enviva's "pellets emit[] more CO2 per unit of heat than natural gas or coal." *Id.* at 20-21. This contention cannot render the statements in Category A actionably misleading for multiple reasons.

For one, the statements say nothing about CO2 emissions at the time of burning. Rather, they discuss the *net* climate benefits of using wood pellets in lieu of fossil fuels for energy production on a *lifecycle* basis. Mem. at 10-11. This would be clear to any reasonable investor reading the statements in context. After all, Statement 7 directs investors to a white paper that explains that "*Life Cycle* Analysis (LCA) is critical" to assessing the environmental impact of wood pellets.[5] And the portion of Statement 13 identified by the Opposition is merely the title to a slide discussing "*Lifecycle* GHG Emissions Reduction vs. Fossil Fuels."[6] There is thus a fatal "mismatch between the statement[s] identified as false and misleading on the one hand"—which concern the net lifecycle impact of the use of wood pellets relative to fossil fuels—"and the reasons why plaintiff says the statement was false or misleading on the other"—which myopically focus only on the point of burning. *In re InvenSense, Inc. Sec. Litig.*, 2017 WL 11673462, at *3 (N.D. Cal. Apr. 12, 2017); *see also* Mem. at 10-11.

For another, in determining whether a statement is misleading, Fourth Circuit courts

---

[5] *See* Ex. 6, Measuring the Environmental Impact of Wood Pellet Electricity: A Case Study of Enviva at 6 (A0468), *available at* https://tinyurl.com/3smsb74h.
[6] Enviva Mar. 1, 2021 Investor Presentation at 4 (*available at* https://tinyurl.com/3cu22scy).

examine "the other information that was publicly available to reasonable investors at the time." *Phillips*, 190 F.3d at 617; *see also* Mem. at 12 (collecting authorities).  Here, Enviva itself disclosed that "[o]f course, the ***combustion*** of forest biomass releases carbon dioxide emissions, even surpassing those of coal on an emissions per unit of energy basis in some cases.  But again, what is climate-relevant is whether the atmosphere is experiencing a ***net*** increase in GHG emissions."[7]  And other public sources similarly stated that "[b]urning [Enviva's] wood pellets immediately releases more CO2 than coal."[8]   In light of such information, even if the Category A statements could be misconstrued as making a comment about CO2 emissions at the point of burning, they are not actionable under well settled Fourth Circuit law.  *See Phillips*, 190 F.3d at 617 ("even lies are not actionable when an investor possesses information sufficient to call the [mis]representation into question"); MTD at 12-13.

In addition, Plaintiff repeats his conclusory refrain that *all* of the statements in Category A were "false because Enviva's practices did not lower carbon emissions, and in fact involved higher greenhouse gas emissions than coal, and did not in any way mitigate climate change."  Opp. at 20. As the Motion explains, this conclusory incantation is insufficient to plead falsity for several reasons.  *See* MTD at 9-14.  For example, it represents mere disagreement on a matter of scientific dispute.  *Id.* at 11-12.[9]  Such a "scientific disagreement" is "non-actionable" under the federal securities laws.  *See id.*  Remarkably, Plaintiff provides no response at all to this argument in its

---

[7] *See* Ex. 7, Seeing the Forest: Sustainable Wood Bioenergy in the Southeast United States at 9 (A0500) (emphasis added), *available at* https://tinyurl.com/28ut6h8r.

[8] Ex. 11, Andrew C. Revkin, *Flawed Carbon Accounting Drives Boom in Burning U.S. Forests in E.U. Power Plants*, N.Y. TIMES, Oct. 22, 2015 at 2 (A0609), *available at* https://tinyurl.com/bde6py52 (last visited May 4, 2023).

[9] The Opposition acknowledges, as does the Complaint, that the European Union considers "burning wood for fuel to be a zero-emission source, provided that the harvesting of that wood is counterbalanced by effective reforestation practices."  Opp. At 5; Comp. at ¶51.

opposition, conceding the point by his silence. *See Tawes*, 2017 WL 6313945, at \*6.

### 2.    Category B: Statements About Forest Growth (Statements 17-24).

As the Memorandum explains, Plaintiff's claims regarding the Category B statements fail for two primary reasons. First, many of the statements simply note that Enviva's buying of low-value wood creates economic incentives for private forest owners to regrow or replant their forests as opposed to developing the land for other purposes. Mem. at 14-15. Plaintiff's apparent disagreement with this notion is nothing more than a "difference between two permissible judgments," which is not actionable under the federal securities laws. *Id.* Second, the other statements at issue merely note that Enviva would "continue to ensure that our wood pellets remain sustainably produced from forests whose inventories have and continue to grow over time." Mem. at 15-16. But the Complaint never alleges that the forests from which it purchased were not growing over time, thus, there is no basis to conclude that there was anything false or misleading about these statements. *Id.*

Plaintiff's Opposition ignores these arguments. For instance, it mentions Statement 18—which notes that "increases in carbon stocks result from the market incentives created by a healthy forest products industry"—in passing. Opp. at 22. But it fails to respond to Defendants' argument that this statement merely expressed the commonsense economic notion that "[p]eople, and companies, respond to incentives." *SAS Inst., Inc. v. World Programming Ltd.*, 952 F.3d 513, 526 (4th Cir. 2020). The only other statement in Category B that the Opposition mentions is Statement 17,[10] which states: "[T]hrough programs like the Enviva Forest Conservation Fund (the 'Conservation Fund'), our sponsor continues to work with our local partners to conserve forest land and support forest growth." ¶ 115 (Statement 17). But neither the Complaint nor the

---

[10] Plaintiff's claims regarding the Statements in Category B that the Opposition does not address should be summarily dismissed. *See supra* n.4.

Opposition suggest that Enviva did not have a Forest Conservation Fund or that it was not aimed at "conserve[ing] forest land and support[ing] forest growth."

Instead, as to both of these statements, Plaintiff merely suggests that Enviva should have done even more to promote forest growth. *See* Opp. at 22 (suggesting that Enviva should have taken "real steps" to curtain non-sustainable practices such as "clear-cutting"). But this suggestion does not render the statements in Category B false or misleading. Rather, to be actionable under the securities laws, a plaintiff must allege facts showing that the statement "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *In re Volkswagen AG Sec. Litig.*, 2023 WL 2505539, at *13 (E.D. Va. Mar. 14, 2023). Plaintiff has failed to do so with respect to the statements in Category B. *See Ong v. Chipotle Mexican Grill, Inc.,* 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (statement that company's "quality assurance department establishes and monitors [the company's] quality and food safety programs" was inactionable where complaint did not allege that the company "failed to undertake such endeavors, but merely that [the company] failed to do so 'adequately'").

### 3.    Category C: Statements About Enviva's Sources of Wood (Statements 25-34).

The statements grouped into Category C state that Enviva purchases "low-grade" "wood that might [otherwise] have gone to waste," as opposed to "traditional sawtimber." Plaintiff contends that these statements were false because Enviva sourced "whole trees." Opp. at 18-20.

Plaintiff has no factual support for this allegation. The statements in Category C do not say that Enviva does not purchase whole trees. To the contrary, Enviva made it clear to investors throughout the Class Period that it *did* source whole trees. For instance, Enviva informed investors in its preliminary prospectus for the IPO as well as in every Form 10-K it has filed since, and numerous other public filings, that its "procured wood fiber consists of . . . *trees* . . . that are

7

unsuitable for or rejected by the sawmilling and lumber industries[.]"   *See* Mem. at 18 n.32 (collecting examples).  In 2019, Enviva published on its website a report stating "[w]e're the only industry in the bunch that can take almost anything . . . . ***Sometimes this takes the form of whole trees***, or roundwood . . . ."[11]  And it published on its website a July 2020 white paper stating "Enviva acknowledges it ***does*** use trees ***in their intact form***."[12]   Indeed, the Opposition itself includes a picture of an Enviva slide deck titled "Where our wood comes from" in which the first item listed is "***Trees*** . . . unsuitable for or rejected by sawmilling."  Opp. at 7.  In light of such disclosures, no reasonable investor would interpret the statements in Category C to deny that Enviva used "whole trees."  *See* MTD at 12 (collecting authorities).[13]

In response to this argument, Plaintiff is left to deny reality.  He argues that "the quoted language does not say 'whole trees.'"  Opp. at 19.  But this is precisely what it does say.  *See supra.*  And, Plaintiff's request that the Court avert its eyes from this context runs contrary to well-established Fourth Circuit law, which ***requires*** that "allegedly fraudulent corporate statements . . . be examined in context and in light of the 'total mix' of information made available to investors."  MTD at 12 (*Phillips*, 190 F.3d at 615).

Plaintiff also points to Statement 32 and argues that it quotes an Enviva employee stating that the company "uses 'tops' and 'limbs' as opposed to 'trunks' for wood."  Opp. at 18.  But as the Memorandum points out, a review of the article from which Statement 32 is drawn shows that the employee was describing specific stacks of wood at a specific location, not making a

---

[11] Ex. 31 (A2648), Jen Jenkins, *Sustainably sourced biomass is a key player in the global energy transition*, ENVIVABIOMASS.COM, June 28, 2019, *available at* https://tinyurl.com/3s77dbdy.
[12] Ex. 6 at 10 (A0472).
[13] *See also Recupito v. Prudential Sec.*, *Inc.*, 112 F. Supp. 2d 449, 458 (D. Md. 2000) (Chasanow, J.) (dismissing Section 11 claims where plaintiffs tried to plead falsity by "'cherry-picking' isolated passages and reading them without reference to the other portions of the Prospectus that discuss the very facts Plaintiff claims were omitted").

categorical declaration that Enviva never uses "trunks" in any capacity. Mem. at 16-17 n.26. No reasonable investor reading the article would get a different impression. After all, the very next sentence of the article acknowledges that "the company's own public disclosures" disclose Enviva's use of "trunks" in other instances. *Id*.

In addition, the Opposition points to Defendants' statements that Enviva "avoided use of sawtimber." Opp. at 18. Plaintiff argues that Defendants "[i]gnor[e] the plain meaning" of this term. *Id.* But, in fact, the Memorandum points out that the dictionary definition of "sawtimber" is not "whole trees" but "timber suitable for sawing into lumber." Mem. at 17. Because whole trees are often not "suitable for sawing into lumber," Plaintiff's contention that Enviva sourced whole trees does not suggest that Enviva procured sawtimber. *See id.* at 17-18.

Last, Plaintiff argues that Enviva's stock price movement following the release of the Blue Orca Report "demonstrates that the truth was previously concealed." Opp. at 20. But stock prices can move for many reasons unrelated to misstatements, including when it learns that a short seller is mounting a pressure campaign on the stock's price. There is thus "no authority for the proposition that market reaction is a gauge for falsity." *Kleinman v. Elan Corp.*, 706 F.3d 145, 155 (2d Cir. 2013).[14]

### 4. Category D: Statements About Enviva's Commitment to Sustainability (Statements 35-47).

The various statements about Enviva's "commitment" to sustainability in Category D have not been adequately alleged to be false or material. As the Memorandum explains, the Complaint

---

[14] The sole case Plaintiff cites in an attempt to support this contention, *Abbey Nat'l*, does not do so. *See* Opp. at 20 (citing *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 362 (S.D.N.Y. 2006)). It stands for the unremarkable conclusion that a stock price decline supports finding the element of ***loss causation*** to be adequately pled. *Abbey Nat'l*, 423 F. Supp. 2d at 362. It does not suggest that a stock price decline contributes in any way to an allegation of ***falsity***. *Id.*

does not allege that Enviva did not have the commitments and priorities expressed in Category D. Mem. at 21. At most, Plaintiff suggests that Enviva has not fully lived up to these ideals, which does not suffice to render them false or misleading. *See id.* (citing *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 550 (W.D. Pa. 2019). The Opposition does not respond to this argument, conceding the point. *See Tawes*, 2017 WL 6313945, at *6.

While the Court need not go further in its analysis of the statements in Category D, the statements also fail for the independent reason that they constitute inactionable puffery. Mem. at 19-21. Plaintiff asserts that the statements at issue here are distinguishable from those in the cases cited by Defendants for this point because they "did not occur in a vacuum; rather they accompanied other, even more concrete representations on the same subject." Opp. at 23. But Plaintiff fails to identify what "other," supposedly "even more concrete," statements he is referring to. And, even if he did, Plaintiff points to no authority suggesting that by making "other" statements a party can render puffery statements material.[15] Rather, at most, the "other" statements themselves may be material.[16] But that is irrelevant here because Plaintiff has not identified these statements, let alone pled with particularity that they are false or misleading. *See* 15 U.S.C. § 78u-4(b)(1)(B) (to survive scrutiny under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading").

In addition, Plaintiff argues that because the Category D statements concerned "the

---

[15] Indeed, courts have held the opposite. *See Freeland v. Iridium World Commc'ns, Ltd.,* 545 F. Supp. 2d 59, 76 (D.D.C. 2008) ("Combining puffery with accurate historical statements does not render the puffery material."); *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627 at *10 (S.D.N.Y. Mar. 30, 2021) (even where puffery statements are "couched between statements of fact and offered for context," a "claim regarding the 'halftruth' nature of puffery [statements] 'does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment.'").

[16] *In re DXC Tech. Co. Sec. Litig.*, 2020 WL 3456129, at *8 (E.D. Va. June 2, 2020), *aff'd sub nom. KBC Asset Mgmt. NV v. DXC Tech. Co.,* 19 F.4th 601 (4th Cir. 2021).

Company's core product" they are "undeniably material." Opp. at 24. This, however, was precisely the situation in each of the *Whole Foods* and *JP Morgan* opinions discussed in the Memorandum, and left unaddressed by the Opposition. As the Memorandum explains, those courts held that investors do not rely on puffery statements for their assessment of important issues. *See* Mem. at 21-22. The same is true here. Because "[a]nalysts and arbitrageurs rely on facts in determining the value of a security," vague "expressions of optimism from company spokesmen" are immaterial as a matter of law regardless of whether they concern a generally important subject matter. *Longman v. Food Lion, Inc.*, 197 F.3d 675, 685 (4th Cir. 1999).

### 5. Category E: Statements About Policies (Statements 48-50).

Although the Opposition has no separate section that addresses the Category E statements, some of the statements in this category are briefly mentioned in certain other sections of the Opposition. For example, Plaintiff takes issue with a statement in Defendants' "Global Responsible Sourcing Policy" noting that Enviva would "not accept any wood from a harvest without" a commitment to "replant or regenerate the forests." Opp. at 21-22. To allege this statement was false, Plaintiff needed to plead facts suggesting that Defendants did not have such a policy. *See* Mem. at 22 (collecting cases).

Plaintiff does not attempt to do so. Instead, he simply points to statements from an anonymous former employee that was "unaware of Enviva seeking any consequences for its landowner partners if they did not reforest their land post-harvest." ¶ 94. As the Complaint does not allege that this former employee was aware of any violations that would require enforcement, this statement is simply irrelevant. Moreover, even if he were aware of such violations, his statement merely suggests that Enviva did not uniformly seek to punish companies that violated their commitments—not that Enviva did not secure such commitments in the first place. Because the statement at issue concerns the commitments themselves—and not how they were enforced—

11

such an observation would do nothing to undermine the truthfulness of the statement.

In addition, Plaintiff includes a conclusory sentence asserting that Defendants' Category D statements were not "announcing rules . . . but were instead describing matters of present fact." Opp. at 21. Tellingly, however, Plaintiff does not identify any specific such statements or articulate what "matters of present fact" he contends they described. *See id.* Nor could he, as the Category D statements in fact describe Enviva's policies, not "present facts." Further, even if these statements did describe a "matter[] of present fact," Plaintiff has not alleged what that fact was, let alone alleged his own facts showing that they were false or misleading, which also requires dismissal of the statements. *See In re Acterna*, 378 F. Supp. 2d at 570 ("Particularity of pleading is required with regard to . . . the manner in which the statements are false[.]").

### 6. Category F: SOX Certifications (Statement 51).

Plaintiff's Opposition brief provides no response to Defendants' arguments that Statement 51—Enviva's SOX certification—is neither misleading nor actionable. He has thus conceded any claim regarding these statements, requiring dismissal. *See Tawes*, 2017 WL 6313945, at *6.

### C. Plaintiff fails to satisfy the PSLRA's high standards for pleading scienter.

As the Memorandum explains, in order to plead a sufficient inference of scienter to withstand scrutiny under the PSLRA, a plaintiff must identify "facts concerning, for example, ***when*** each defendant or other corporate officer learned that a statement was false, ***how*** that defendant learned that the statement was false, and ***the particular document or other source*** of information from with the defendant came to know that the statement was false." *In re ActernaCorp.*, 378 F. Supp. 2d at 575 (emphasis added and citation omitted); *see also* Mem. at 29-30. In other words, the PSLRA requires plaintiffs to plead the "who, what, when, where, and how" of its contentions in order to establish scienter. *Id.*

The Opposition wholly ignores these requirements. It entirely ignores the Memorandum's

12

Defendant-by-Defendant examination of scienter, implicitly conceding that the Complaint fails to plead *any* specific facts suggesting that *any* Defendant acted with scienter.  Instead, the Opposition's perfunctory scienter section simply repeats Plaintiff's contention that Enviva "used whole trees" at its production plants.  *See* Opp. at 25-26.  As this is entirely consistent with what Defendants told investors, it certainly cannot add anything to the scienter calculus.  *See, e.g.,* MTD at 18.  Moreover, and equally fatally, the Opposition does not even attempt to connect this purported fact to any individual Defendant.  *See In re ActernaCorp.*, 378 F. Supp. 2d at 574 (finding scienter not sufficiently pled where plaintiff failed to show "how each individual Defendant knew of the alleged fraud").

At most, Plaintiff alleges that "at a Q2 2022 meeting" unspecified Enviva "executives[ and] senior leaders . . . voted that Enviva stop stating publicly that it did not use whole trees."  Opp. at 26.  This is insufficient to establish scienter for several reasons.  Most fundamentally, Enviva never made a public statement denying that it used whole trees.  But even if they had, Plaintiff has not alleged that any of the individual defendants were in attendance at that meeting.  *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 814 (S.D. Tex. 2012) (rejecting broad, "undifferentiated" references to "officers and directors" and "senior management" as impermissible "group pleading").  And, in any event, the purported meeting took place at an unspecified time in "Q2 2022."  Opp. at 26.  Plaintiff has not challenged a single statement made after Q2 2022.  The contention about the Q2 2022 meeting is thus a mere "fraud-by-hindsight" allegation, which is "of no probative value in assessing whether any Defendant acted with scienter at the time any statement or omission was actually made."  *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 896 (W.D.N.C. 2001).

Plaintiff also asserts that the individual Defendants, in general, held themselves out as

knowledgeable about Enviva's operations, and thus should have known facts contrary to their statements. Opp. at 26. But such conclusory "group pleading" (which does not identify what any particular Defendant knew or how he learned it), falls far short of alleging the "who, what, when, where, and how" of the alleged fraud, as is necessary to sufficiently allege scienter under the PSLRA. *In re ActernaCorp.*, 378 F. Supp. 2d at 572 (rejecting such "group pleading" because "Plaintiffs cannot claim that the individual Defendants' titles or positions at [the defendant company] establish that they must have known of the alleged fraud.") (citing *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 715 (E.D. Va. 2003) (similar)). Plaintiff has thus failed to allege scienter and his Exchange Act claims should be dismissed.

**1.      The Complaint's failure to assert any well-pled motivation to defraud further undermines Plaintiff's attempt to allege scienter.**

As the Memorandum explains, the failure of the Complaint's scienter allegations is only reinforced by Plaintiff's inability to identify any particular motive to defraud investors that would support a finding of scienter. Mem. at 32. Plaintiff seeks to avoid this conclusion by arguing that "greenwash[ing]" was necessary to Enviva's success. Opp. at 26-27. But a "[desire] to increase [] share price" or for general corporate success "is precisely the kind of generalized motive shared by all companies that is insufficient to plead scienter under the PSLRA." *Boykin v. K12, Inc.*, 54 F.4th 175, 186 (4th Cir. 2022).[17]

Instead, to adequately plead motive, "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d

---

[17] *See also Phillips*, 190 F.3d at 622 (in merger context, plaintiffs' allegations that director sought to manipulate the stock price to assure the success of a merger to retain a position on the board and obtain a higher price for his stock did not constitute an adequate motive); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("If scienter could be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects, 'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'").

Cir. 2001); *see also Phillips*, 190 F.3d at 621 (motive requires pleading "concrete benefits" to the individual defendants).   As the Opposition cannot argue that the Complaint has pled such "a concrete and personal benefit" to any individual Defendant, Plaintiff has failed to allege a motive to defraud.  This failing should "weigh heavily" in the Court's scienter analysis.  *See* Mem. at 32.

      **2.**      **Plaintiff cannot rescue his deficient scienter allegations by invoking the "core operations" doctrine.**

Finally, Plaintiff seeks to rescue his scienter allegations by resorting to the "core operations doctrine."  Opp. at 27.  As an initial matter, Plaintiff cannot invoke the core operations doctrine simply by asserting that the statements at issue relate to the company's general line of work.  *See* Mem. at 32 n.65.  All corporate statements inevitably relate to a company's general line of work. Thus, such a standard would "eviscerate the core-operations test and turn it into an automatic presumption of comprehensive knowledge on the part of management."  *Id.* (quoting *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *15 (N.D. Cal. Mar. 24, 2014)).

Moreover, even where it does apply, the core operations doctrine can at most strengthen an already existent inference of scienter built on "***detailed allegations*** establishing the defendants' ***actual exposure***" to facts contradicting the statements at issue.  *Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014) (emphasis added).  As explained above and in the Memorandum, Plaintiff has failed to make such "detailed allegations" here.   His scienter allegations thus "fall[] short of the PSLRA's particularity requirements," requiring dismissal of Plaintiff's Exchange Act claims.  *Id.*[18]

### III.   CONCLUSION

For all these reasons, the Complaint should be dismissed in its entirety and with prejudice.

---

[18] As explained at greater length in the Underwriter Defendants' Reply Memorandum in Support of Motion to Dismiss, which the Enviva Defendants hereby incorporate by reference, Plaintiff's Securities Act claims also fail and should be dismissed on both standing and falsity grounds.

Dated:  August 1, 2023                                    Respectfully submitted,


                                                          */s/ Ronald J. Tenpas*
                                                          Ronald J. Tenpas (#14448)
                                                            State Bar No. 24002307
                                                          Michael C. Holmes (admitted *pro hac vice*)
                                                          Jeffrey S. Johnston (admitted *pro hac vice*)
                                                          Robert Ritchie (admitted *pro hac vice*)
                                                          Thomas P. Mitsch (admitted *pro hac vice*)
                                                          VINSON & ELKINS L.L.P.
                                                          2200 Pennsylvania Avenue NW
                                                          Suite 500 West
                                                          Washington, DC 20037
                                                          Telephone: (202) 639-6500
                                                          Telephone: (202) 639-6604
                                                          rtenpas@velaw.com
                                                          mholmes@velaw.com
                                                          jjohnston@velaw.com
                                                          rritchie@velaw.com
                                                          tmitsch@velaw.com

                                                          *Attorneys for the Enviva Defendants*


## CERTIFICATE OF SERVICE

I, Ronald J. Tenpas, hereby certify that on August 1, 2023, true copies of the foregoing

were served on all counsel of record via the Court's ECF system.


                                                          */s/ Ronald J. Tenpas*
                                                          Ronald J. Tenpas


16