**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| DAVID FAGEN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ENVIVA INC., et al.,<br><br>　　　　　Defendants. | Civil Action No. 8:22-cv-02844-DKC<br><br>Hon. Deborah K. Chasanow |

**UNDERWRITER DEFENDANTS'**
**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

-i-

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ............................................................................................................. 2

I. PLAINTIFF'S OPPOSITIONS CONFIRM THAT HE LACKS STANDING TO BRING SECTION 11 CLAIMS ............................................................................ 2

II. PLAINTIFF'S OPPOSITIONS DO NOT SAVE HIS SECTION 11 CLAIM .................. 5

    A. Plaintiff's Section 11 Claim Is Subject to the Heightened Pleading Standards of Rule 9(b) ............................................................................ 5

    B. The Challenged Statements Are Not Actionably False or Misleading .................. 6

        1. Statements in the February 2021 Press Release ......................................... 6

        2. Statements in the 2020 10-K .................................................................. 9

        3. Statements in the March 2021 and May 2021 Press Releases ................. 10

        4. Statements in the April 2021 Press Release ............................................. 10

        5. Statements in the July 2021 Press Release ............................................. 11

CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2U, Inc. Sec. Class Action*,
  2021 WL 3418841 (D. Md. Aug. 5, 2021) ...............................................................4

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...........................................................................2, 3

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC*,
  423 F. Supp. 2d 348 (S.D.N.Y. 2006)......................................................................9

*Cozzarelli v. Inspire Pharm. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ...................................................................................5

*Employees' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v.
  MacroGenics, Inc.*,
  61 F.4th 369 (4th Cir. 2023) ....................................................................................8

*In re Humphrey Hosp. Tr., Inc. Sec. Litig.*,
  219 F. Supp. 2d 675 (D. Md. 2002).........................................................................8

*Jones v. Blair Wellness Ctr., LLC*,
  2022 WL 1082645 (D. Md. Apr. 11, 2022) ..........................................................4, 5

*In re Marriott Int'l, Inc.*, *Customer Data Sec. Breach Litig.*,
  543 F. Supp. 3d 96 (D. Md. 2021)............................................................................9

*In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*,
  876 F. Supp. 2d 616 (D. Md. 2012)..........................................................................4

*In re PEC Sols., Inc. Sec. Litig.*,
  418 F.3d 379 (4th Cir. 2005) ...................................................................................8

*Shapiro v. UJB Fin. Corp.*,
  964 F.2d 272 (3d Cir. 1992).....................................................................................9

*Siracusano v. Matrixx Initiatives, Inc.*,
  585 F.3d 1167 (9th Cir. 2009) .................................................................................8

*Slack Techs., LLC v. Pirani*,
  143 S. Ct. 1433 (2023)..............................................................................................2

*Stenlund v. Marriott Int'l, Inc.*,
  172 F. Supp. 3d 874 (D. Md. 2016) .........................................................................4

*TransEnterix Inv. Grp. v. TransEnterix, Inc.*,
    272 F. Supp. 3d 740 (E.D.N.C. 2017)....................................................................................3, 4

*In re Willis Towers Watson plc Proxy Litig.*,
    937 F.3d 297 (4th Cir. 2019) ....................................................................................................8

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ......................................................................................3, 4, 13

**PRELIMINARY STATEMENT**

Plaintiff's oppositions fail to respond, at virtually every turn, to the multiple fundamental flaws identified by Defendants in their motions to dismiss. As the Underwriters[1] explained in their motion ("UW MTD"), Plaintiff's Section 11 claim fails at the threshold because he does not plausibly allege that his shares were either purchased *directly* in Enviva's secondary offering *or* can be traced to the Registration Statement for that offering. Plaintiff's contention in his Memorandum of Law in Opposition to the Underwriter Defendants' Motion to Dismiss ("Opp. UW") that "nothing more" than conclusory standing allegations is required at the pleading stage has been squarely rejected by the Fourth Circuit, as well as the First, Fifth, and Ninth Circuits. Plaintiff makes no attempt to distinguish any of these cases, and even relies on cases that go directly against him. This case should be dismissed in its entirety as to the Underwriters on this ground alone.

Plaintiff's oppositions are equally non-responsive to the remaining arguments raised by the Underwriters on the lack of any actionably false or misleading statements in the Registration Statement. Plaintiff fails to engage with the language of *any* of the challenged statements. Among other things, he (1) does not dispute that the Registration Statement itself specifically disclosed the existence of a public debate over the environmental sustainability of Enviva's practices, (2) ignores the Underwriters' arguments that many of the challenged statements constitute inactionable puffery, and (3) does not dispute that many of the challenged statements are merely headers for slides or descriptions of underlying publicly disclosed data that Plaintiff does not

---

[1]    Except as otherwise noted, all defined terms herein have the same definition as in the Underwriters' Motion to Dismiss. All emphases are added, unless indicated otherwise.

challenge as false or misleading. As such, even if Plaintiff had plausibly alleged standing—and he has not—the Section 11 claim against the Underwriters should still be dismissed.

## ARGUMENT

I.  **PLAINTIFF'S OPPOSITIONS CONFIRM THAT HE LACKS STANDING TO BRING SECTION 11 CLAIMS.**

Plaintiff spends less than a single page of his two oppositions addressing the threshold issue of Section 11 standing. That is perhaps because he has so little to say in the face of case after case—including every Circuit to have addressed the issue—holding that conclusory standing allegations like those asserted here do not suffice in secondary offering cases.

Plaintiff does not, and cannot, dispute that a Section 11 plaintiff must "plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1435 (2023). Plaintiff instead contends that, at the pleading stage, "[g]eneral allegations (as here) that a plaintiff purchased 'pursuant or traceable to' the subject" Registration Statement "suffice to allege standing." Opp. UW at 6. But as the Underwriters' motion explains, that argument has been rejected by every Circuit to have analyzed the issue, including the Fourth Circuit, and by district courts within the Fourth Circuit. *See* UW MTD at 4-8. These courts uniformly hold that, in a secondary offering case, the complaint must include sufficient factual specificity to render it *plausible* that the shares were purchased pursuant to the allegedly defective registration statement. Thus, Plaintiff's assertion that the Underwriters "do[ ] not cite a single case holding that such allegations are insufficient, or that evidence of standing must be alleged," Opp. UW at 6, is both bizarre and wrong.

Take *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013), a case that Plaintiff curiously cites as purportedly supporting his argument that "general" allegations suffice. *See* Opp. UW at 6. To the contrary, *Century Aluminum* goes 180 degrees the other way. It holds

that post-*Iqbal* and *Twombly*, merely alleging that shares are "directly traceable" to a secondary offering is insufficient to withstand a motion to dismiss. *See Century Aluminum*, 729 F.3d at 1107-08. Instead, "[w]hen [as here] a company has issued shares in multiple offerings under more than one registration statement, . . . a greater level of *factual specificity* will be needed before a court can reasonably infer that shares purchased in the aftermarket are traceable to a particular offering." *Id.* at 1108. A plaintiff must "allege facts from which we can reasonably infer" that his shares can be traced to the challenged registration statement, and a "conclusory allegation" that shares were "'directly traceable to the Company's Secondary Offering' does not allow us to draw a reasonable inference about anything because it is *devoid of factual content*." *Id.*; *see also* UW MTD at 6 (citing First and Fifth Circuit cases holding the same in secondary offering cases).

The Fourth Circuit, too, requires the same "factual enhancement" at the pleading stage. *See* UW MTD at 6-7. In *Yates v. Mun. Mortg. & Equity, LLC*, the Fourth Circuit held that allegations that the plaintiff purchased shares "pursuant and/or traceable" to a secondary offering, without any other "supporting facts," was insufficient to allege plausibly that the plaintiff had purchased shares directly in the secondary offering, as is required to plead standing under Section 12(a)(2). 744 F.3d 874, 900 (4th Cir. 2014). Citing the Ninth Circuit's *Century Aluminum* decision with approval, the Fourth Circuit made clear that allegations "merely consistent with the possibility" that a plaintiff purchased shares traceable to the relevant offering would be insufficient to establish standing, because *Iqbal* and *Twombly* demand more—"the allegations must also render such a conclusion plausible." *Id.* at 899, 901.

Plaintiff ignores *Yates,* even though it is Fourth Circuit authority directly contradicting his contention that conclusory standing allegations suffice at the pleading stage. Plaintiff likewise ignores and does not even attempt to distinguish *TransEnterix Inv. Grp. v. TransEnterix, Inc.*, 272

F. Supp. 3d 740 (E.D.N.C. 2017), which relies on both *Century Aluminum* and *Yates* in holding that a complaint in a Section 11 secondary offering case must contain sufficient "factual enhancement plausibly suggesting that the[] shares are traceable to the" registration statement of the secondary offering to survive a motion to dismiss. *Id.* at 761. Plaintiff has made the same conclusory allegations that were rejected by these courts.

The two district court cases that Plaintiff cites do not warrant a different result. *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616 (D. Md. 2012), was decided before the Fourth Circuit's decision in *Yates* (and prior to the Ninth and First Circuit's decisions on Section 11 standing in secondary offering cases too). As for *In re 2U, Inc. Sec. Class Action*, that case (which the Underwriters also cited in their brief) merely holds that the plaintiff had adequately alleged standing in a secondary offering case where it had "allege[d] that it purchased shares *at the May 23, 2018 Offering itself*." 2021 WL 3418841, at *26 (D. Md. Aug. 5, 2021). But that doesn't help Plaintiff because Plaintiff *never* alleges that he purchased shares directly in Enviva's secondary offering. *See*, *e.g.*, Compl. ¶ 44 (alleging only that defendants owed duties to Plaintiff and those who purchased stock "pursuant *or* traceable to the Offering Documents").

Indeed, Plaintiff does not dispute that his certification setting forth the details of his stock purchase makes plain that he "*cannot* have purchased any shares directly in the secondary offering" because he purchased shares *above* the $70.00 "maximum offering price per security" under the Registration Statement. *See* UW MTD at 7. Plaintiff's failure to even acknowledge, much less respond to, this argument is a concession that he did not purchase any shares directly in the secondary offering. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to this argument, Plaintiff concedes the point."); *Jones v. Blair Wellness*

*Ctr., LLC*, 2022 WL 1082645, at *5 n.7 (D. Md. Apr. 11, 2022) ("Plaintiff may concede a point when she fails to respond to an argument raised in a motion to dismiss.").

Nor has Plaintiff included *any* factual enhancement rendering it plausible that his shares can be traced to Enviva's secondary offering, particularly because over *61 million* shares of Enviva stock were outstanding at the time of the secondary offering of fewer than five million shares. *See* UW MTD at 7-8.  Indeed, Plaintiff does not point to any factual allegations rendering it plausible that his shares can be traced to the secondary offering, thereby conceding this point too.  Without any allegations that his shares came directly from the secondary offering or can plausibly be traced to that offering, Plaintiff's Section 11 claim must be dismissed.

## II.    PLAINTIFF'S OPPOSITIONS DO NOT SAVE HIS SECTION 11 CLAIM.

### A.    Plaintiff's Section 11 Claim Is Subject to the Heightened Pleading Standards of Rule 9(b).

Contrary to Plaintiff's argument, *see* Opp. UW at 6-8, his Section 11 claim must satisfy Rule 9(b)'s heightened pleading standards, *see* UW MTD at 3-4.  Plaintiff argues that conclusory statements in the Complaint constitute "well-pleaded facts" that Enviva's alleged conduct sounds "in recklessness, not fraud."  *See* Opp. UW at 8.  But all Plaintiff points to are "superficial label[s] of negligence or strict liability" and "conclusory disclaimer[s]" of fraud that do not relieve Plaintiff's burden of satisfying Rule 9(b).  *See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

Plaintiff himself agrees that Rule 9(b) applies where "the same alleged false statements support the Exchange Act counts, and are specifically alleged elsewhere in the complaint to be fraudulent."  Opp. UW at 7.  That is precisely what Plaintiff has pled here.  As the Underwriters' motion explains, the very same statements alleged to support Plaintiff's Section 11 claim are also alleged to be fraudulent for purposes of his Section 10(b) claim.  *See* UW MTD at 3 (citing Compl.

-5-

¶¶ 47, 48-49, 80, 226, 248).  And here the case for applying Rule 9(b) is even stronger given that Plaintiff has not even attempted to segregate his Securities Act and Exchange Act allegations, lumping all of the allegations together as part of a single purported fraudulent scheme.  *See* UW MTD at 3.  Thus, Rule 9(b) applies—but even if it doesn't, Plaintiff's claims would still fail under Rule 8(a).

**B.    The Challenged Statements Are Not Actionably False or Misleading.**

Standing issues aside, Plaintiff's oppositions also confirm that Plaintiff has not pled any actionably false misstatements or omissions in the Registration Statement.  Plaintiff ignores both the language of the challenged statements and the Underwriters' arguments.  Instead, Plaintiff's principal argument seems to be that his claims can go forward because Enviva's stock dropped, which must mean the statements were material.  *See* Opp. UW at 4-5.  But *every* securities class action involves some alleged stock drop; that does not mean that a plaintiff can state a viable claim.

**1.  Statements in the February 2021 Press Release**

The first set of statements reference the effect of Enviva's product on "lifecycle GHG emissions of [its] customers," Enviva's belief that it "must do [its] part" to "mitigate the impacts of climate change," and Enviva's role in "an all-in solution to climate change."  Compl. ¶ 161.

*First*, these statements are nonactionable because they concern Enviva's position on its overall environmental sustainability, which was subject to an ongoing public debate that Enviva itself disclosed to investors.  *See* UW MTD at 9-10.  Plaintiff acknowledges that statements about Enviva's "lifecycle GHG emissions" may be "technically true," but argues that such statements are nonetheless actionable because "all reasonable inferences must be drawn in Plaintiff's favor."  Memorandum of Law in Opposition to the Enviva Defendants' Motion to Dismiss ("Opp. Enviva") at 21.  But that principle cannot remedy Plaintiff's failure to allege any facts showing how a reasonable investor would have been misled by these accurate statements.

Plaintiff's contention that Enviva omitted that its "product emitted more greenhouse gas than coal" at the point of burning, Opp. UW at 5, is irrelevant because the statements concern *lifecycle* GHG emissions *not* GHG emissions from burning, and Plaintiff never explains how a reasonable investor would have been misled otherwise.  Indeed, Enviva itself explicitly disclosed in its offering materials that the environmental sustainability of Enviva's practices was a matter of public debate.  *See* UW MTD at 10 (discussing disclosure in 2020 10-K).  Plaintiff's oppositions ignore Enviva's disclosure of the public debate over the environmental sustainability of its practices, but this disclosure—along with the widespread public debate on this issue—defeats his claim that Enviva violated the securities laws by failing to disclose that its practices purportedly "did not in any way mitigate climate change."  *See* Compl. ¶ 162.

*Second*, Plaintiff ignores the forward-looking aspect of the alleged misstatements and their surrounding context, failing to respond to the Underwriters' argument that the alleged misstatements are non-actionable statements referring to the impact that Enviva hopes to have on environmental sustainability *in the future*.  *See* UW MTD at 10-11.  Plaintiff's failure to respond to this argument is also fatal to his claim.  *See supra* at 4.  Moreover, Plaintiff's argument that the "bespeaks caution" doctrine does not apply because "the referenced cautionary language says nothing about the precise misrepresentations and omissions here," Opp. UW at 5, does not engage with the specific cautionary language discussed above.  Likewise, Plaintiff's conclusory statement that "none of the statements or omissions in question were pure expression of belief," *id.*, ignores the language of the statements and its surrounding context, *see* UW MTD at 11-12.

*Third*, Plaintiff also fails to respond to the Underwriters' argument that the alleged misstatements are non-actionable corporate puffery.  *See* UW MTD at 12-13.  Instead, Plaintiff seemingly conflates a materiality argument with the Underwriters' puffery argument, inexplicably

arguing that such issues cannot be resolved on a motion to dismiss. *See* Opp. UW at 3-5. But courts routinely dismiss puffery statements at the motion to dismiss stage, because "expressions of puffery and corporate optimism generally do not constitute securities violations." *Employees' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 386 (4th Cir. 2023). The cases that Plaintiff relies upon are inapposite, as none concern whether it is appropriate to dismiss statements qualifying as corporate puffery.[2] And here, Enviva's statements regarding an "all-in solution to climate change" and its belief that it must "do [its] part to mitigate" climate change are precisely the type of puffery statements that courts routinely reject at the pleading stage, because they "are the kind of general statements of pride and optimism upon which reasonable investors would not rely." *See In re Humphrey Hosp. Tr., Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 682-83 (D. Md. 2002).

*Fourth*, with respect to the portion of the February 2021 Press Release that constitute statements of belief, Plaintiff does not challenge the Underwriters' argument that all of the statements in the press release support Enviva's stated belief. *See* UW MTD at 13. Plaintiff's failure to argue that Enviva did not hold this belief also defeats his claim.

---

[2] For instance, Plaintiff relies on the Ninth Circuit's decision in *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1179 (9th Cir. 2009), which holds that it was improper for the district court to determine, at the motion to dismiss stage, that omissions of alleged adverse effects of a pharmaceutical drug were immaterial because the number of complaints was not statistically significant. That has no bearing whatsoever on whether it's appropriate to dismiss statements constituting corporate puffery. Likewise, *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 305 (4th Cir. 2019), has nothing to do with dismissal of puffery statements, and instead concerns whether it was material to withhold information about secret compensation discussions that created a conflict of interest in a pending merger. Finally, *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005), merely states the general legal standard for materiality, and likewise says nothing about puffery statements.

## 2.  Statements in the 2020 10-K

Plaintiff also challenges two alleged misstatements contained in Enviva's 2020 10-K.  The first statement states that Enviva's customers are subject to "stringent requirements" regarding the "sustainability of the fuels they produce," and that Enviva's "wood fiber procurement is conducted in accordance with leading forest certification standards."  Compl. ¶ 111.  The Complaint nowhere alleges that Enviva's customers aren't subject to these requirements, or that Enviva's procurement isn't conducted in accordance with these standards, nor has Plaintiff even identified what these requirements or standards are.  *See* UW MTD at 14.  Plaintiff fails to respond to this argument and thus concedes that this alleged misstatement cannot sustain its Section 11 claim.  *See supra* at 4.

The second statement describes Enviva's environmental "commitments."  These statements are non-actionable "general, aspirational language" that cannot state a claim.  *See* UW MTD at 15; *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 135 (D. Md. 2021), *aff'd*, 31 F.4th 898 (4th Cir. 2022).  As *Marriott* explains, "general commitment statements" are "unactionable puffery."  543 F. Supp. 3d at 135.  Plaintiff claims these statements are actionable because they were "contrary to concrete information in Defendants' possession" and cites two non-binding cases to support his argument.  Opp. Enviva at 22.  But the disclosures at issue in those cases—about a company's existing financial condition and management practices—are not remotely similar to the aspirational "commitment" language at issue here that courts routinely hold is non-actionable.  *See City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC*, 423 F. Supp. 2d 348, 360 (S.D.N.Y. 2006) (statements describing a company's "then-existing financial condition" and assuring investors that there was no cause for concern actionable); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992) (statements describing company's loss management practices as "conservative" and "cautious" actionable).

This claim also fails because Plaintiff nowhere challenges Enviva's commitment to these goals; instead, the Complaint merely alleges—in conclusory fashion—that Enviva has not achieved them. *See* UW MTD at 15. This does not render Enviva's statement about its goals false or misleading. Regardless, Plaintiff doesn't respond to the Underwriters' argument that these "continuing commitments" are non-actionable forward-looking statements. Plaintiff therefore concedes this argument too. *See supra* at 4.

### 3. Statements in the March 2021 and May 2021 Press Releases

Plaintiff likewise nowhere addresses the specific language of the challenged statements regarding Enviva's (1) claim to be "fighting climate change, displacing coal, and growing more trees"; (2) "substantial GHG reductions"; (3) "participation in a 'market driven by [a] global commitment to fight climate change'"; and (4) "responsible wood program." Compl. ¶ 164. And Plaintiff's arguments with respect to these statements fail for many of the same reasons stated above. Specifically, Plaintiff's assertions of falsity with respect to the first three statements ignores Enviva's scientifically supported position that its product reduces lifecycle greenhouse gas emissions, and the public debate on this issue. *See supra*, Part B.1; *see also* UW MTD at 16. Plaintiff also fails to respond to the Underwriters' argument that he has ignored these statements' context; they make no affirmative representations and are merely headers describing various slides containing data that Plaintiff does not challenge. UW MTD at 17. In failing to respond, Plaintiff dooms his claim. *See supra* at 4. As for the statement regarding Enviva's "responsible" wood supply program, this is a generalized puffery statement. *See* UW MTD at 18; *see also supra*, Parts B.1-2. Plaintiff makes no argument to the contrary, likewise conceding this argument.

### 4. Statements in the April 2021 Press Release

Plaintiff challenges statements in an April 2021 press release in which Enviva (1) "tout[ed] its purported 'adherence to and accountability for sustainable forest management and wood

sourcing'; and (2) claim[ed] that 'Enviva requires landowners to commit to replant following harvests in which Enviva participates.'" Compl. ¶ 168.  The first statement's context shows that the quoted language merely describes Enviva's motivation for releasing data publicly: to be transparent about its adherence to and accountability for forest management.  UW MTD at 19. Plaintiff ignores this argument and does not dispute that Enviva released this data in the spirit of transparency, requiring dismissal.  With respect to the second statement, Plaintiff likewise fails to respond to the Underwriters' argument that Plaintiff has not disputed that Enviva requires landowners to "commit" to replanting forests, and that this statement nowhere guarantees that replanting would occur.  *Id.* at 19.  Plaintiff's failure to identify anything false or misleading about this statement or to respond to this argument means this statement also fails.

**5.  Statements in the July 2021 Press Release**

The final set of statements challenged by Plaintiff include: (1) Enviva's statement that "'[s]ustainability is the core of our value proposition in our mission to displace coal, grow more trees, and fight climate change'" and reference to its "sustainable forest management'; and (2) Enviva's statement that its "data demonstrate that . . . on average just under 32% of the volume from each harvest went to Enviva" and that Enviva "only uses the remaining low-value wood in its operations." Compl. ¶ 174.

The first statement is a nonactionable forward-looking statement of corporate optimism on an issue of public debate.  *See* UW MTD at 20-21; *supra* Part II.B.1.  The second statement regarding Enviva's average volume collected from each harvest is not false or misleading because Plaintiff's allegations are not inconsistent with the statement.  *See* UW MTD at 21.  In any event, Plaintiff derives his allegations from data that Enviva itself publicly disclosed, and the securities laws do not require disclosure of information already in the public domain.  *Id.*  Plaintiff does not

-11-

explain why either of these statements is actionable, ignoring the Underwriters' arguments, and they should be dismissed on that ground alone. *See supra* at 4.

Finally, with respect to Enviva's representation that it "only uses remaining low-value wood in its operations," that statement is neither false nor misleading because Plaintiff has not alleged that Enviva used anything other than low-value wood. *See* UW MTD at 20. Indeed, Plaintiff concedes that Enviva's specifically defined low-value wood as including wood that was "unsuitable for or rejected by the sawmilling and lumber industries because of small size, defects (e.g. crooked, knotty, etc.) disease or pest-infestation" as well as "weaker or deformed trees." *See* Opp. Enviva at 6. In other words, the definition of low-value wood included whole trees, and Plaintiff cannot argue to the contrary. *See also* UW MTD, Ex. 4 at 7 (disclosing in Enviva's 2020 Form 10-K that Enviva uses "principally low value wood materials, such as *trees generally not suited for sawmilling* or other manufactured forest products"); *id.* at 42 (same).

Acknowledging that the challenged statement about low-value wood might be "technically accurate," Opp. Enviva at 19, Plaintiff insists that it is still misleading because Enviva represented that it avoided the use of sawtimber, and used tree tops and limbs, as opposed to trunks. Opp. Enviva at 18-19 (citing Compl. ¶¶ 62-63, 191). However, Plaintiff has not plausibly alleged that Enviva ever used sawtimber, a particular *subset* of high-quality whole trees that Plaintiff concedes are "used for construction or furniture-making purposes." Compl. ¶ 63. As for the purported statement that Enviva uses tree tops and limbs, Plaintiff relies upon a hearsay statement purportedly made by an Enviva employee to CBS news in April 2022, *months after the secondary offering in this case*, about the type of wood used in a particular location. *Id.* ¶ 191. Even setting aside the fact that this purported statement never promised Enviva did not use whole trees, it is

-13-

plainly irrelevant to Plaintiff's Section 11 claim, which is limited to the four corners of the Registration Statement. *See Yates*, 744 F.3d at 894 (citations omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Underwriters respectfully request that the Court dismiss Plaintiff's Section 11 claim with prejudice.

Dated:   August 1, 2023

Respectfully Submitted,

*/s/ Jonathan Direnfeld*

Jonathan Direnfeld (D. Md. Bar No. 28859)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
jdirenfeld@orrick.com

Darrell S. Cafasso (admitted *pro hac vice*)
Jennifer M. Keighley (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
dcafasso@orrick.com
jkeighley@orrick.com

Alexander K. Talarides (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5769
atalarides@orrick.com

*Attorneys for the Underwriter Defendants*

-14-